(No. 70615.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIE C. PUGH, JR., Appellant.

*Opinion filed July 22, 1993.—Modified on denial of rehearing November 29, 1993.*

HARRISON, J., dissenting.

John P. Buckley, of Chicago, and James F. Martin, of Highland Park, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb and Kathleen Bom, Assistant State's Attorneys, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

On January 20, 1987, defendant, Willie C. Pugh, Jr., was charged by indictment in Cook County with two counts of murder (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2)), two counts of felony murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(3)), one count of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)), two counts of forcible detention (Ill. Rev. Stat. 1985, ch. 38, par. 10—4(a)(1)), one count of unlawful use of a weapon (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(a)(7)), and three counts of aggravated unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3.1(a)). Defendant subsequently entered blind pleas of guilty to all counts. The trial court accepted defendant's guilty pleas and entered findings of guilt on all counts. Finding that certain counts merged with others, the trial court entered judgment on felony murder (count IV), armed robbery (count V), forcible detention (counts VI and VII), and unlawful use of weapons (count VIII). Defendant's convictions for intentional and knowing murder were vacated. Defendant waived his right to a jury at his death penalty hearing. Defendant stipulated to his eligibility for the death penalty. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6).) After hearing

evidence in aggravation and mitigation, the court sentenced defendant to death on the felony-murder conviction and to terms of imprisonment on the remaining convictions. Defendant's death sentence has been stayed pending direct review by this court (Ill. Const. 1970, art. VI, §4(b); 134 Ill. 2d Rules 603, 609(a)).

Defendant raises the following issues on appeal: (1) whether his guilty plea was involuntary by reason of ineffective assistance of counsel; (2) whether his guilty plea was involuntary due to his inability to understand; (3) whether his claim of accidental shooting during the sentencing hearing indicated his plea was not voluntary; (4) whether the finding of death penalty eligibility must be vacated because he received ineffective assistance of counsel; (5) whether the finding of death penalty eligibility must be vacated due to insufficient admonishments; (6) whether he received ineffective assistance of counsel at all phases of the proceedings due to defense counsel's failure to conduct a reasonable investigation; (7) whether he was entitled to an evidentiary hearing on his claim of ineffective assistance of counsel; (8) whether the trial court erred in refusing to consider additional evidence in mitigation; (9) whether the death sentence is excessive in his case; and (10) whether the death penalty statute is unconstitutional.

As part of the factual basis for the pleas, the State recited the proposed testimony of two South Chicago Heights police officers. Sergeant Richard Wolff would testify that at about 9:30 p.m. on December 16, 1986, he proceeded to the Clark gas station located at 2601 Chicago Road in South Chicago Heights in response to a radio dispatch of an alarm at the station. Upon entering the station, Wolff saw defendant standing behind a counter and next to a man, later identified as 19-year-old Brian Douglas. Defendant pulled out a sawed-off shotgun and pointed it at Wolff and then at Douglas. Defendant

said, "Don't push me, I want out." Douglas indicated he was being robbed. Wolff holstered his own revolver and told defendant not to shoot anyone.

Officer Michael Haskins entered the station and both he and Wolff told defendant not to shoot and to let Douglas go. While holding Douglas with one hand and the shotgun in the other, defendant walked Douglas out of the front door toward 26th Street. Defendant ordered Haskins and Wolff to stay inside the station. Wolff called for a backup. The officers yelled to defendant to let Douglas go and the officers would not follow him.

Wolff stayed in the station and Haskins pursued defendant, who was walking around the corner of the service station near a telephone booth. Defendant had turned westward on 26th Street. When defendant stopped, Haskins was about 100 feet from him. Haskins observed defendant move about 1½ steps backwards from Douglas, lower the shotgun and fire a shot into Douglas' chest area. Douglas was pronounced dead from the gunshot wound at 10:20 p.m. Haskins chased defendant about 100 feet before losing him when defendant turned the corner at 120 West 26th Street.

In an area southwest of the station, Wolff found a purple school jacket with "Central" in white lettering on the back. In the jacket sleeves he found three cartons of cigarettes identified as property from the gas station.

The victim's mother, Loretta Douglas, would testify that the purple jacket belonged to her son. She would also testify as a life-and-death witness for Douglas. Haskins would testify that upon entering the station he observed another male, later identified as Ingram Rush, exit the station carrying a coat similar to the one Wolff found.

Anthony Sapit of the Cook County sheriff's department would testify that he took defendant into custody

about three quarters of a block west of Chicago Road at 26th Street.

Detective Larry Dujsik and Assistant State's Attorney John Murphy would testify regarding defendant's statement made about 4:15 a.m. on December 17, 1986. After waiving his *Miranda* rights, defendant said that Ingram Rush was the "setup" man who was to distract the store attendant. As Rush talked to Douglas, defendant picked up some chips and soda pop. Defendant went to the cash register, pulled out a gun and told Douglas to give defendant the money and no one would get hurt. Defendant saw Douglas push the alarm button. Defendant said that when the police arrived he told them to stay there. Defendant left the store with Douglas, but had to tell the police to get back inside the station.

Defendant said that he had the gun pointed at the store as he walked with Douglas. Initially, defendant said two other men were involved in the crime and one of them shot Douglas. Defendant changed this part of his statement and said only Rush and he were involved. Defendant admitted shooting Douglas and stated, "The gun went off while it was in my hand."

Dujsik was directed by defendant to the shotgun, a spent casing and a hat. The shotgun had been dismantled—one part had been hidden under some leaves and another part had been placed in a car trunk. Testimony from a forensic expert, Karen Vander Werff, would indicate the shell came from the shotgun and pellets from Douglas' body were consistent with being fired from the shotgun. State testing showed the trigger pull was normal to medium-heavy. Autopsy results would show Douglas died from a gunshot wound to his chest about five inches to the right of the midline.

Before the factual basis was presented, the trial judge admonished defendant of the effects of his guilty plea. Defense counsel frequently referred to "technical"

pleas of guilty until the trial judge advised counsel that he did not know what a "technical" plea was. At one point defendant stated with respect to his right to remain silent, "Yes, I understand, but I would like to testify in my own behalf." Defendant's attorney then told the court, "Phase 3." The judge later questioned defendant regarding the voluntariness of his pleas. The judge noted the charges against defendant, including the fact that the State would be seeking the death penalty under section 9—1(b)(6) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)). The judge recited the provisions of section 9—1(b)(6) and defendant acknowledged that he understood. Following the recitation, defendant agreed that the asserted facts were true. The trial judge accepted defendant's guilty pleas and adjudged defendant guilty of those offenses previously enumerated.

The trial judge moved immediately to the first phase of the death penalty hearing, eligibility. The assistant State's Attorney indicated that this phase would be by way of stipulation. Then, the following exchange occurred:

"MR. SIMMONS [Assistant State's Attorney]: Judge, it will be stipulated that the Court take judicial notice of the findings of the blind plea that was just entertained by the Court as to the murder, and the felonies that the court entered judgment on.

And it would also be a stipulation between the parties that the defendant is twenty-two years of age at this time or twenty-one.

DEFENDANT: Twenty-two.

MR. SIMMONS: Twenty-two years of age.

THE COURT: So stipulated, Counsel?

MR. RAGO [Defense attorney]: So stipulated.

THE COURT: You understand what that stipulation is?

DEFENDANT: Yes, sir.

THE COURT: All right, the Court will find the defendant eligible for the death penalty."

Aggravating and mitigating evidence was presented in the second phase of the death penalty hearing a few days later. In aggravation Officer Haskins elaborated on his stipulated testimony presented at the guilt phase. Particularly, he described how defendant released Douglas, took about two steps to the side, lowered the shotgun, put his other hand under the stock and, about four seconds later, shot Douglas. Officer Dujsik's testimony and the stipulated testimony of Assistant State's Attorney John Murphy showed that defendant did not indicate, nor did it appear, that he was under the influence of drugs or alcohol when he gave his statements in the early morning hours of December 17, 1986. The State also presented the stipulated testimony of Officers Wolff and Sapit, and Karen Vander Werff.

Witnesses presenting mitigating evidence included defendant's high school counselor, a family friend, the probation officer who prepared the pretrial investigation report, defendant's parents, and defendant. Other than defendant, no other witnesses testified regarding defendant's alcohol problem. Defendant testified that he did not intend to kill Douglas, but the gun discharged when defendant turned away to run. He said he had been drinking all day on December 16, 1986, and had smoked marijuana laced with PCP. Defendant expressed remorse over his actions. The pretrial investigation report showed defendant had no juvenile or adult criminal record. He completed 12 years of school and had been employed from 1983 until December 1986. Defendant indicated in the report that he consumed alcohol all day on December 16, 1986. He said he drank 10 quarts of beer and a pint of gin daily, but denied having an alcohol problem. Additionally, defendant's mother collected over

200 signatures and over 20 letters asking for mercy for defendant.

The trial judge sentenced defendant to death on the felony-murder conviction, having vacated defendant's convictions for intentional and knowing murder, and imposed prison sentences on the remaining convictions. The judge noted the lack of corroborating evidence regarding defendant's alcohol problem. A motion for reconsideration of sentence was filed on January 21, 1988. Defendant filed a motion to withdraw the plea of guilty and a request for appointment of counsel other than the public defender on February 18, 1988, alleging ineffective assistance of counsel. Defendant's attorney (hereinafter defense counsel) filed a motion to withdraw on February 18, 1988, which was granted and new counsel was substituted.

On August 26, 1988, new counsel (hereinafter post-trial counsel) filed motions for a deposition and for production of the gun and access to the crime lab for testing. These motions were denied. Counsel filed a motion on September 13, 1988, for a physical examination of defendant; an amended motion to vacate the convictions; an amended motion to withdraw the guilty pleas; and an amended motion for reconsideration of the sentences. In general, it was alleged that defendant received ineffective assistance of counsel in entering his plea of guilty because his attorney did not understand that in order for defendant to be eligible for the death penalty for felony murder, defendant must have intended to kill the victim; counsel failed to investigate; and the trial court failed to properly admonish defendant. Defendant presented the September 23, 1988, affidavit of defense counsel in support of defendant's motion to vacate his plea. The affidavit provided that defendant consistently told defense counsel that defendant did not intend to kill Douglas, and the shooting was an accident. Defense counsel ad-

vised defendant to plead guilty to the indictment because he believed that a finding of felony murder by itself was sufficient to render defendant eligible for the death penalty. Defense counsel also entered into the stipulation at the eligibility phase of the death penalty hearing based on this belief. He advised defendant not to challenge the State's factual presentation or to oppose stipulations in the first two phases, and to testify only at phase III. Defense counsel would not have advised defendant to enter a plea to the indictment and further would not have entered into the stipulation if he had realized that felony murder by itself was insufficient for the death penalty. Defendant's separate affidavit of November 4, 1988, corroborated defense counsel's statements. The trial court denied the motions.

In seeking to vacate the convictions, post-trial counsel argued that there was a large amount of mitigating evidence which defense counsel failed to investigate. It was also argued that evidence existed which would have raised a reasonable doubt on defendant's eligibility for the death penalty as well as affected the evidence in aggravation at sentencing. When the trial court denied the motion, defendant's post-trial counsel filed an offer of proof. The offer of proof contained the proposed testimony of defendant's defense counsel which indicated that defendant had told him the gun trigger mechanism may have been sensitive or defective and that defendant was drunk at the time of the crime. Defense counsel did not contact any person who signed the petition, or any of 26 character witnesses provided by defendant's mother, and only contacted three of the 24 persons who wrote letters. He did not obtain police photographs of the crime scene, nor did he interview Officers Haskins or Wolff. Although defendant had difficulty in paying attention, defense counsel did not have him examined by a doctor.

The offer of proof included the proposed testimony of five witnesses regarding defendant's intoxicated state on December 16, 1986, three of whom saw him that night. Mitigating evidence of defendant's physical problems, defendant's mental deficiencies, and other circumstances affecting defendant preceding the crime was included in the offer.

A second motion to withdraw the plea was filed on December 2, 1988, wherein defendant alleged that his plea was not voluntary due to deficits in the cognitive areas of memory, attention and concentration. The affidavit of clinical psychologist Dr. Suraleah Michaels, attached thereto, indicated she interviewed defendant on several occasions, tested defendant, and reviewed the transcript of the January 11, 1988, plea hearing. In her opinion defendant's ability to understand and comprehend the charges and admonitions was materially impaired.

Subsequent motions filed on June 1, 1989, to vacate the death sentence based on the unconstitutionality of the death penalty statute and for a new sentencing hearing were denied. This appeal followed.

First, defendant contends he received ineffective assistance of counsel in entering his guilty plea because defense counsel did not understand that in addition to proving felony murder, the State also had to prove defendant's intent to kill in order that defendant be eligible for the death penalty. Based on this misapprehension of the law, defense counsel advised defendant to enter a blind plea of guilty to the entire indictment which included intentional and knowing murder counts (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2)). As a result defendant contends his plea must be vacated because it was not made voluntarily and intelligently.

The State initially responds to defendant's claim by arguing that defense counsel did not misapprehend the

law, as evidenced by a motion to preclude the death penalty filed on February 27, 1987. In that motion defense counsel claimed that under *Enmund v. Florida* (1982), 458 U.S. 782, 73 L. Ed. 2d 1140, 102 S. Ct. 3368, involving felony murder, defendant could not be sentenced to death unless the State proved defendant intended to kill the person who was killed. Claiming the motion and defense counsel's affidavit are in direct contradiction, the State makes the serious charge that defense counsel is guilty of unethical behavior by attempting to interject potentially reversible error into the plea proceeding, a charge we reject in our later discussion.

Assuming defense counsel did not misapprehend the law, the State then claims that defense counsel's advice was merely reasonable strategy based upon the law and facts. According to the State, the evidence of defendant's intent to kill or knowledge that his conduct created a strong probability of death or great bodily harm (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(b)) was so overwhelming that defendant's only hope was to enter a blind guilty plea and throw himself on the mercy of the court. When this calculated and informed risk failed, the State contends, defense counsel filed the affidavit.

The State cites *Stewart v. Peters* (7th Cir. 1992), 958 F.2d 1379, in support of its argument that defendant's blind plea was only an attempt to seek the mercy of the court. However, in *Stewart*, the attorney was not operating under a misapprehension of law, and the record established that the plea was a calculated and informed risk that failed.

Whether to permit a guilty plea to be withdrawn is within the sound discretion of the trial court. (*People v. Hillenbrand* (1988), 121 Ill. 2d 537, 545.) Such discretion should be exercised liberally, particularly in capital cases, in favor of life and liberty. (*People v. King* (1953), 1 Ill. 2d 496, 500.) When it appears that the guilty plea was

entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel, or the case is one where there is doubt of the guilt of the accused or where the accused has a defense worthy of consideration by a jury, or where the ends of justice will be better served by submitting the case to the jury, the court should permit withdrawal of the guilty plea. (*People v. Johnson* (1993), 154 Ill. 2d 356, 361-62; *People v. Morreale* (1952), 412 Ill. 528, 531-32.) A defendant may enter a guilty plea because of some erroneous advice by his counsel, but this fact alone does not destroy the voluntary nature of the plea. (*People v. Correa* (1985), 108 Ill. 2d 541, 548-49.) The resolution of the question of whether the defendant's pleas, made in reliance on counsel's advice, were voluntarily, intelligently, and knowingly made depends on whether the defendant had effective assistance of counsel. *Correa*, 108 Ill. 2d at 549.

The proper standard for determining whether defendant was denied effective assistance of counsel in entering his guilty plea is set forth in *Hill v. Lockhart* (1985), 474 U.S. 52, 57, 88 L. Ed. 2d 203, 209, 106 S. Ct. 366, 369-70. In *Hill* the United States Supreme Court found that the two-part test announced in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, for ineffective-assistance-of-counsel claims was applicable to the plea process. (*People v. Jones* (1991), 144 Ill. 2d 242, 254.) This court has adopted the standard. (*Jones*, 144 Ill. 2d at 254; *People v. Huante* (1991), 143 Ill. 2d 61, 67-68.) To establish that a defendant was deprived of effective assistance of counsel, a defendant must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result. *Hill*, 474 U.S. at 57, 88 L. Ed. 2d at 209, 106 S. Ct. at 369; *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *Huante*, 143 Ill. 2d at 67-68.

In order to satisfy the "prejudice" requirement in a plea proceeding, the defendant must show that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. (*Hill*, 474 U.S. at 59, 88 L. Ed. 2d at 210, 106 S. Ct. at 370.) The instant defendant argues that the second prong of the *Strickland* standard has been met herein as evidenced by defense counsel's and defendant's attestations that defendant would not have entered a guilty plea but for counsel's error. The State correctly points out that under *Hill*, the question of whether the error prejudiced the defendant by causing him to plead guilty rather than to go to trial depends in large part on a prediction of whether the defendant likely would have succeeded at trial. (*Hill*, 474 U.S. at 59, 88 L. Ed. 2d at 210, 106 S. Ct. at 370-71; *Jones*, 144 Ill. 2d at 254-55; see *Huante*, 143 Ill. 2d at 73.) The record should demonstrate a "reasonable probability" that but for the error, the defendant would have rejected the plea arrangement. (See *Huante*, 143 Ill. 2d at 73.) As under *Strickland*, we need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. See *People v. Albanese* (1984), 104 Ill. 2d 504, 527.

The State contends that defendant was not prejudiced by defense counsel's failure to advise defendant to proceed to trial on a theory of accident because the likelihood that defendant would have been acquitted on the intentional and knowing murder counts is infinitesimal. The State dismisses the additional evidence that posttrial counsel found upon his investigation as either irrelevant or not credible. The State also claims that accident, even if proved, is not a defense to felony murder. *People v. Allen* (1974), 56 Ill. 2d 536.

Defendant argues that he was prejudiced by defense counsel's misapprehension of the law because he pleaded guilty to intentional and knowing murder, thus establishing the statutory aggravating factors necessary for death penalty eligibility. He claims that had his theory of accident been presented at a trial, a reasonable doubt of his guilt would have existed as to the intentional and knowing murder counts.

We need not address whether defendant was prejudiced with respect to his guilty pleas to intentional and knowing murder because those convictions were vacated by the trial court. When multiple murder convictions have been entered for the same act, the less culpable convictions must be vacated. (*People v. Pitsonbarger* (1990), 142 Ill. 2d 353, 377.) Although an intentional killing involves the more culpable mental state than knowing and felony murder (*People v. Mack* (1984), 105 Ill. 2d 103, 137), the trial court herein vacated the convictions for intentional and knowing murder. The State has raised no error with respect to the trial court's ruling. Therefore, defendant stood convicted of only the felony murder when the hearing to determine death sentence eligibility began.

Defendant does not claim that he would have succeeded at trial on a theory of accident with respect to the felony-murder count. In his reply brief, defendant concedes that accident is not a defense to felony murder. (*Allen*, 56 Ill. 2d at 544-45.) Thus, even if defense counsel had presented defendant's theory of accident at a trial on felony murder, defendant would not have been acquitted of that offense. Defendant suffered no prejudice at the guilt phase of the proceedings due to defense counsel's misapprehension of law. Defendant's plea of guilty to felony murder stands.

We turn now to the sentencing phase of the proceeding. Our first inquiry is whether defense counsel's per-

formance was deficient in that it "fell below an objective standard of reasonableness." (*Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *Huante*, 143 Ill. 2d at 68.) The standard for reasonableness in guilty plea cases " 'depends *** not on whether a court would retrospectively consider counsel's advice to be right or wrong, but whether that advice was within the range of competence demanded of attorneys in criminal cases.' " *Huante*, 143 Ill. 2d at 68-69, quoting *McMann v. Richardson* (1970), 397 U.S. 759, 770-71, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1448-49.

Defense counsel was incorrect in his belief that defendant was eligible for the death penalty based solely on a finding of felony murder. An essential element which the State must prove besides the felony murder is a culpable (intentional or knowing) mental state. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(b); *People v. Ramey* (1992), 151 Ill. 2d 498, 545.) The statutory aggravating factor relied on in this case as the basis for imposition of the death penalty is a narrow form of the felony-murder rule. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(b); *People v. King* (1986), 109 Ill. 2d 514, 542.) To establish this factor, the State must prove beyond a reasonable doubt (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(f); see *Ramey*, 151 Ill. 2d at 544) that the defendant acted with the intent to kill or that he acted knowing his conduct created a strong probability that the victim would die or suffer great bodily harm (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(b); *Ramey*, 151 Ill. 2d at 541; *King*, 109 Ill. 2d at 542). Death sentences have been upheld when the evidence has been sufficient to support a finding of the alternative mental state, knowledge. *King*, 109 Ill. 2d at 542.

After examining the motion to preclude imposition of the death penalty filed in the instant case, we find it does not contradict defense counsel's affidavit. We note

that the motion was never ruled on by the trial court or apparently presented for a hearing by defense counsel. While both sides theorize as to the reasons that counsel abandoned the motion, we need not indulge in such speculation in view of our determination.

In the motion defense counsel did not raise the issue of lack of intent to kill, which intent was required under the Illinois statutory aggravating factor to impose the death penalty (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(b)). Rather, defense counsel argued that under *Enmund v. Florida* (1982), 458 U.S. 782, 73 L. Ed. 2d 1140, 102 S. Ct. 3368, defendant could not be sentenced to death for felony murder unless the State could prove defendant had the intent to kill. Counsel claimed the State had no evidence that defendant intended to kill in this case and thus the State had no good-faith basis to seek the death penalty. We also note that defense counsel did not argue that the State lacked sufficient evidence to prove that defendant acted knowingly. Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(b).

Counsel cited *People v. Jones* (1982), 94 Ill. 2d 275, in the motion to preclude as basic source material supporting the necessity-of-intent proposition. *Jones*, however, concerned a defendant sentenced to death under section 9—1(b)(3) of the Criminal Code, murder of two or more individuals. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)(3).) The *Jones* court relied on *Enmund* in vacating one of three death sentences.

Defense counsel's failure to rely upon Illinois statutory law in the motion shows a lack of knowledge or understanding of the law. This indication is later confirmed, not contradicted, by his affidavit. Counsel's stipulation to defendant's eligibility for the death penalty further corroborates counsel's mistaken belief that defendant had no defense to death penalty eligibility because of the felony-murder conviction.

Thus, the State's argument that defense counsel exercised reasonable strategy based upon Illinois law and the facts of this case is not supported by the record. Defense counsel's advice to defendant was attributable to counsel's misapprehension of the law and not to tactics or strategy. (See *People v. Wright* (1986), 111 Ill. 2d 18, 26-27; *People v. Hayes* (1992), 229 Ill. App. 3d 55, 62-63.) It is clear that counsel's advice, based upon a misapprehension of the law, fell outside the range of competence demanded of attorneys in criminal cases. *Huante*, 143 Ill. 2d at 68-69.

We do find that defendant was prejudiced by defense counsel's misapprehension of the law at the first phase of the sentencing proceeding, death penalty eligibility. Since defense counsel did not understand that in addition to proving felony murder the State had to prove beyond a reasonable doubt that defendant possessed the culpable mental state of intent or knowledge, defense counsel stipulated to defendant's eligibility for the death penalty. The State argues that the exchange between the court and the parties set out earlier in this opinion was not a stipulation to death penalty eligibility. First, defense counsel's affidavit indicates it was such a stipulation. Second, the trial court understood and accepted it as a stipulation to death penalty eligibility. At the sentencing hearing on January 14, 1988, the judge stated, "And the second phase is stipulated that defendant is eligible for the death penalty." The judge later said "that the factors in aggravation, which would allow the imposition of the death penalty were stipulated to." Obviously the trial court had not merely taken judicial notice of the facts and made his own determination nor had he improperly relied on the vacated convictions of intentional and knowing murder to find defendant eligible for the death penalty. Thus, defendant waived a hearing on the issue of death penalty eligibility and stipulated to his eli-

gibility for such penalty based on counsel's misapprehension of law.

After examining the entire record, there is a reasonable probability that but for counsel's error, defendant would have rejected the stipulation to death penalty eligibility because defendant's evidence pointed to an accidental shooting. (See *Huante*, 143 Ill. 2d at 73.) None of defendant's evidence was presented by defense counsel at the first phase of sentencing because counsel believed such evidence was irrelevant once felony murder was established.

It is apparent from post-trial counsel's investigation that evidence existed to discredit Officer Haskins as the only eyewitness to the shooting. First, Office Wolff's police report indicates that Haskins was ordered inside by defendant, but it fails to mention that Haskins went outside again. While defendant argues that the report contradicts Haskins' testimony that he was outside when defendant shot Douglas, we find it does not corroborate Haskins' account. This fact is still significant.

Other evidence revealed by post-trial counsel likely would have discredited Haskins' testimony, thus eliminating the only eyewitness to the shooting. Although the State contends this evidence is either irrelevant or corroborative of Haskins' testimony, we disagree. First, Haskins said he was about 100 feet away. The diagram of the scene shows lights around the station; however, some of the lights were deflected toward the station. Lights aimed at Haskins would have impaired his ability to see rather than assist it. Photographs also indicate that Haskins was looking out into an area of darkness where the shooting occurred. Photographs show that without the aid of police lighting, the location of the shooting was dark. The report of Officer Wolff shows he had to use his flashlight to determine that Douglas was shot. There were also obstacles between the station and

the shooting which could have impaired Haskins' view further.

Haskins said he chased defendant about 100 feet as defendant ran west and then turned north. Defendant actually ran south. The State points out that at a hearing on Ingram Rush's motion to suppress, Haskins *thought* defendant ran north because he lost sight of defendant. While this point alone would not be sufficient to discredit Haskins, the impeachment evidence taken as a whole would have cast sufficient doubt on his testimony.

We also note that the gunshot wound to the right of Douglas' chest corroborates defendant's story that the gun went off as defendant ran away. The State claims this fact could be due to Douglas' movement; however, this argument contradicts Haskins' statement that Douglas did not move. The State posits that a sawed-off shotgun is not accurate, but defendant was only a few feet from Douglas. The State asserts that the wound was consistent with Haskins' testimony at sentencing that defendant stepped to the side of Douglas. However, Haskins' police report and his stipulated testimony at the plea hearing indicated that defendant stepped backwards from Douglas and not to the side.

While defendant told his attorney the trigger pull was sensitive, defense counsel failed to test the gun. Once again the State assumes that defendant was not prejudiced by this in view of the State's findings that the trigger pull was normal to medium-heavy. The State implies that counsel made an informed choice not to test the gun, when the overall circumstances surrounding this case show that counsel did not investigate defendant's defense to death penalty eligibility due to counsel's misapprehension of the law.

The failure to investigate and present this evidence prejudiced defendant and cannot be dismissed, as the

State suggests, as merely a different manner of impeachment (see *People v. Flores* (1989), 128 Ill. 2d 66). The State, relying on *People v. Del Vecchio* (1985), 105 Ill. 2d 414, argues that defendant was not prejudiced because the trial court rejected his defense after the sentencing hearing. The opinion in *Del Vecchio* merely indicates that after hearing evidence of the defendant's insanity claim, the court rejected it. In the case at bar, the trial court was only presented with defendant's testimony as to his claim of accident. It did not hear *all* the evidence at the sentencing hearing because defense counsel had not presented it. The State correctly notes that the trial court found the police officers credible; however, the court made this finding in the absence of the impeachment evidence. Since defense counsel failed to present all the evidence at the sentencing hearing, we do not find the court's imposition of the death penalty a reliable indication that defendant was not prejudiced at the death penalty eligibility phase of the hearing.

The State contends that even in the absence of an intent to kill, defendant was death penalty eligible based on knowing murder by his own account. The fact that defendant admitted sawing off the shotgun goes to his intent to commit armed robbery. While defendant said he "waved" the shotgun, he said he did this while in the gas station. Defendant emphatically denied pointing the shotgun at Douglas or holding it in his direction at the time of the shooting. Unlike *People v. King* (1986), 109 Ill. 2d 514, wherein the defendant pushed the victim while holding a loaded gun to his head, defendant herein claimed not to have pointed the gun at Douglas at the time of the shooting. Evidence did show the shotgun had to be cocked first, but testimony indicated it could remain cocked until the trigger was pulled.

Similarly, the defendants in *People v. Owens* (1984), 102 Ill. 2d 88, and *People v. Eddmonds* (1984), 101 Ill. 2d 44, were engaged in conduct at the time of the victim's death from which a knowing mental state could be inferred. Defendant herein had always maintained that he was fleeing when the gun went off accidentally. In the absence of credible eyewitness testimony to the contrary, we cannot conclude that defendant would have been found eligible for the death penalty beyond a reasonable doubt. The State relies on *People v. McEwen* (1987), 157 Ill. App. 3d 222, regarding accident and felony murder. A close reading of *McEwen* shows the case concerned a conviction of felony murder and did not involve the death penalty. And, in *People v. Barker* (1980), 83 Ill. 2d 319, the defendant fired a shotgun in the direction of police officers which was sufficient to find attempted murder. Here, defendant claimed the firing of the gun was accidental.

The State is correct in its claim that accident would not relieve defendant of guilt for the felony-murder count. (See *People v. Chandler* (1989), 129 Ill. 2d 233, 248; *Allen*, 56 Ill. 2d 536.) However, the statutory aggravating factor necessary to impose the death penalty is not proved by a conviction of felony murder alone. (See *People v. Holman* (1984), 103 Ill. 2d 133, 159.) Thus, defendant was prejudiced by counsel's misapprehension of the law with respect to the first phase of the death penalty sentencing hearing. The ineffectiveness of defense counsel requires that defendant's death sentence be vacated and the cause remanded for a new death qualifying and sentencing hearing.

Next, defendant contends that his ability to comprehend the charges and admonishments during the guilt phase of the plea proceeding was materially impaired. He relies on the opinion of Dr. Michaels, who tested and interviewed defendant many months after his con-

viction and sentence. Defendant claims that based on that evidence the trial court should have vacated his plea or ordered an evidentiary hearing.

A defendant is competent to plead guilty if he is capable of understanding the proceedings and assisting in his own defense even if he may be mentally or emotionally disturbed. (*People v. Van Ostram* (1988), 168 Ill. App. 3d 517.) Whether a *bona fide* doubt has been raised is a decision resting largely within the discretion of the trial court. (See *People v. Murphy* (1978), 72 Ill. 2d 421.) The trial court, unlike a court of review, is in a position to observe the defendant and evaluate his conduct. (*Murphy*, 72 Ill. 2d at 431.) The mere fact that a psychologist expressed the opinion that defendant was not competent did not mandate a similar finding by the trial court, as the ultimate issue is for the trial court, not the experts, to decide. *People v. Bleitner* (1990), 199 Ill. App. 3d 146.

The trial judge observed defendant's conduct and demeanor at the time of the guilty plea. It is clear from the record that defendant was competent to enter a guilty plea. The trial court did not abuse its discretion in refusing to conduct an evidentiary hearing or vacate the guilty plea.

In the third issue, defendant contends that by claiming at the sentencing hearing that the shooting was accidental, his guilty plea was vitiated. (See *Brady v. United States* (1970), 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463.) He argues that when he denied an intentional shooting by claiming he accidentally shot Douglas, the trial judge had a duty to inquire whether defendant understood the nature and consequences of his plea, and the stipulation to death penalty eligibility. Due to the judge's failure to so inquire, defendant claims his plea and stipulation must be vacated.

In Illinois, a court is not precluded from accepting a plea of guilty, in spite of a defendant's claim of innocence, if the record reflects a factual basis from which a jury could find the defendant guilty of the offenses to which the plea was entered. (*People v. Barker* (1980), 83 Ill. 2d 319.) We have already noted the fact that defendant's convictions for intentional and knowing murder were vacated. Defendant's claim of an accidental shooting did not vitiate his guilty plea with respect to his felony-murder conviction, as accident is not a defense to that offense. The court did not abuse its discretion in denying defendant's motion to withdraw defendant's plea of guilty. Defendant's death sentence has been vacated on other grounds by this court.

Defendant attacks the death penalty eligibility phase of the proceeding on another ground. He claims that the stipulation was tantamount to a guilty plea and thus he should have received admonishments by the trial court. (See *People v. Smith* (1974), 59 Ill. 2d 236; *People v. Stepheny* (1974), 56 Ill. 2d 237.) Defendant improperly argues in a footnote that he was not apprised of his right to testify at phase two. Since we have determined that defendant must receive a new death penalty eligibility hearing due to ineffectiveness of defense counsel, we do not address this issue.

Defendant asserts that he received ineffective assistance of counsel at all phases of the proceedings due to defense counsel's failure to conduct a reasonable investigation. Particularly defendant argues that defense counsel did not properly investigate defendant's claim of accidental shooting or seek information to discredit Officer Haskins. He contends that his attorney failed to investigate and present evidence in mitigation at the second phase of defendant's sentencing hearing. In view of our holding that defendant is to receive a new sentencing hearing, we do not address this issue.

Based on our holding, we find it unnecessary to address defendant's other issues concerning an evidentiary hearing on his claim of ineffective assistance of counsel; the court's failure to consider additional evidence in mitigation; or whether the death sentence is excessive in this case. While defendant argues that the Illinois death penalty statute is unconstitutional, he provides no citation of authority to support his argument, nor does he attempt to address this court's prior holdings on the matter. This court has previously rejected defendant's arguments, and we see no reason to disturb those decisions. *Ramey*, 151 Ill. 2d 498.

For the reasons stated, defendant's convictions are affirmed, but his sentence of death is vacated. The cause is remanded to the circuit court of Cook County for a new hearing to determine defendant's eligibility for the death penalty, as well as a new sentencing hearing. We direct that the hearings be held before a different trial judge.

*Convictions affirmed;*
*death sentence vacated;*
*cause remanded*
*with directions.*

JUSTICE HARRISON, dissenting:

Based on his counsel's advice, defendant pled guilty to counts of intentional, knowing and felony murder. The trial court entered judgment on only one count of felony murder. This was improper. Because all counts involved the same homicide and because intentional murder involves a more culpable mental state and is a more serious crime than felony murder, the trial court should have entered a judgment of conviction only for intentional murder and vacated defendant's convictions for knowing and felony murder. See *People v. Pitsonbarger* (1990), 142 Ill. 2d 353, 377-78; *People v. Lego*

(1987), 116 Ill. 2d 323, 344; *People v. Guest* (1986), 115 Ill. 2d 72, 104.

Although the majority concedes that counsel's advice was based upon a misapprehension of the law, it concludes that defendant did not sustain prejudice at the guilt phase of the proceedings as a result of counsel's misguidance because defendant's claim of accident would not have prevented his conviction for felony murder and, based on the trial court's error, judgment was in fact entered for felony murder. Contrary to the majority, I do not believe that errors committed by the trial court, regardless of the windfall they may bestow upon a defendant, should be considered in determining whether that defendant was prejudiced by his counsel's ineffective assistance. Here, but for the trial court's error, defendant would be death-qualified based upon his counsel's advice to plead guilty to all counts. Had the defendant been fully advised, he would have realized to what extent he was placed in jeopardy by the plea. Under these circumstances, it is difficult to understand how it would have been to his advantage to plead guilty to counts of intentional, knowing and felony murder. Therefore, I would hold that there was a "reasonable probability" that, but for defense counsel's mistaken belief that felony murder alone was sufficient to qualify defendant for the death penalty, defendant would have rejected the plea arrangement. *Hill v. Lockhart* (1985), 474 U.S. 52, 59, 88 L. Ed. 2d 203, 210, 106 S. Ct. 366, 370; see also *People v. Huante* (1991), 143 Ill. 2d 61, 73.

While the majority is correct in noting that accident would not relieve defendant of guilt for felony murder (*People v. Allen* (1974), 56 Ill. 2d 536, 545), the statutory aggravating factor necessary to impose the death penalty is not proved by a conviction of felony murder alone (see *People v. Holman* (1984), 103 Ill. 2d 133,

159). Intent or knowledge must also be established. If defendant had gone to trial and been acquitted on the intentional and knowing murder counts, the State would have been precluded from seeking the death penalty. Instead, defendant followed counsel's advice, pled guilty to those counts and stipulated to the requisite statutory aggravating factor necessary for the death penalty. Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6).

It is therefore clear that defendant gained nothing in entering a guilty plea, despite the presence of evidence which the majority admits may relieve him of guilt for intentional and knowing murder. Further, it cannot be concluded that defendant made an informed decision that his interest required entry of a guilty plea despite his belief he did not intentionally kill Brian Douglas. (See *People v. Barker* (1980), 83 Ill. 2d 319, 332 (discussing *North Carolina v. Alford* (1970), 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160).) Defendant's guilty plea was based on ineffective assistance of counsel and should be vacated. I would therefore reverse and remand the judgment of the circuit court. While I realize that defense counsel's misapprehension of the law went to the death penalty aspect of this case, counsel's ineffectiveness so infected defendant's defense that the ends of justice would be better served by permitting defendant to withdraw his entire guilty plea.