2019 IL App (1st) 172822-U

No. 1-17-2822

Order filed December 19, 2019

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 12452 |
| | ) | |
| JAMES GORDON, | ) | Honorable |
| | ) | Nicholas R. Ford, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's denial of defendant's motion to withdraw his guilty plea is affirmed where the evidence establishes his trial counsel was not ineffective.

¶ 2    Defendant James Gordon pled guilty to one count of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(4) (West 2008)) and was sentenced to 16 years' imprisonment. The circuit court denied defendant's motion to withdraw his guilty plea. Defendant appeals, contending that

the circuit court's decision was an abuse of discretion because he received ineffective assistance of counsel and, therefore, his guilty plea was not knowing or voluntary. We affirm.

¶ 3     Defendant was charged with three counts of aggravated criminal sexual assault and one count of aggravated criminal sexual abuse, arising from an incident on May 22, 2008, wherein a woman, D.L., reported defendant made contact between his penis and her vagina by the use of force or threat of force. Defendant was first arrested on May 23, 2008, but was released by police after their initial investigation. He was subsequently convicted on an unrelated matter and imprisoned from late 2009 until April 17, 2013. In June 2013, he was arrested in connection with the present case.

¶ 4     During the pendency of the case, defendant filed a motion to dismiss the charges "based on his right to a speedy trial and that the states [*sic*] delay in charging him has made it impossible for him to get a fair trial."[1] In the motion, defendant acknowledged "semen found inside the [victim] matched" defendant. During the hearing on the motion, defendant testified that, on May 23, 2008, he was arrested and questioned about his whereabouts the previous night. Defendant told the police officers he was with his girlfriend at the time, "Tamicia [*sic*] Barfield," and gave them his phone, which contained her name and telephone number. Defendant was "not sure how to spell [her name]." The police officers called Barfield, asked defendant additional questions, and reviewed his phone's call history. Defendant was released and not charged with aggravated criminal sexual assault at the time. The police officers told him it was "just a misunderstanding."

¶ 5     The court held a hearing on the motion, during which defendant testified that, when he was arrested in 2013, his attorney, Dennis Sherman, attempted to find Barfield, but was unable to

---

[1] Only the first page of defendant's motion to dismiss is included in the record on appeal.

locate her and did not have any way to contact her. Defendant did not have Barfield's address or phone number, and "tried to give [his attorney] some information to some other people that could *** locate [her]." He believed his attorney hired an investigator to locate her.

¶ 6 Defense counsel told the court, "Judge, if you want, I can bring the investigator. I didn't think I was going to need him. I do have an investigator," to which the court stated it "[did not] really see that as being dispositive of [its] ruling." Defense counsel argued the five-year delay from the time of the alleged crime to defendant's arrest was prejudicial to defendant, because defendant was no longer able to locate his alibi witness, and therefore was unable to file an alibi defense. Counsel argued he did not know whether "that witness would overcome the presumption with the DNA," but she had been "good enough" for the police to release defendant in 2008.

¶ 7 The trial court denied the motion, finding defendant did not meet his burden of showing actual and substantial prejudice. The court stated it found defendant "not particularly credible," and he could not specify where Barfield worked or how to spell her name. It noted the State had "strong evidence" that defendant's genetic material was recovered from the victim, and it did not know "how that would effect [sic] the alibi."

¶ 8 With defendant present in court, defense counsel set the case for a jury trial and indicated to the assistant state's attorney he was going to file an answer with an alibi defense and witness list of only one witness: "Tamkia [sic] Barfield," "[i]f we could find her."[2]

¶ 9 On November 29, 2016, the scheduled date of trial, defendant, through counsel, requested a pretrial conference pursuant to Supreme Court Rule 402. After admonishing defendant that it

_____

[2] This answer, if filed, is not included in the record.

would hear details about his background and facts of the case, the trial court went off the record to hold the conference. Following the conference, the court told defendant the State agreed to the court's request, a 16-year sentence to be served at 85 percent, for one count of aggravated criminal sexual assault. Defendant accepted the offer, after indicating he understood he would be giving up the right to a jury or bench trial, to confront and cross-examine witnesses, present evidence on his own behalf, and to remain silent and rely on the State's inability to prove him guilty. Defendant indicated he was not threatened or promised anything in order to plead guilty, and was pleading guilty of his own free will. The court told defendant that he was charged with a Class X offense, with a sentencing range of 6 to 30 years' imprisonment, and defendant stated he understood.

¶ 10    The parties stipulated to the following:

> "[T]he evidence would show that on May 22, 2008 the victim in this case [D.L.] was at a bus stop around the location of 79th and Halsted where she was approached by defendant whom she would identify in open court.
>
> At some point later she was walking away from the bus stop, and the defendant approached her with another individual and forced her into a vacant building where she was sexually assaulted and vaginally penetrated by the defendant's penis.
>
> The victim immediately outcried at a police station. She was taken to the hospital. A criminal sexual assault kit was done, and DNA was found from the vaginal swabs that related or associated back to the defendant."

The trial court found the stipulation sufficient to prove defendant guilty beyond a reasonable doubt of aggravated criminal sexual assault and entered a conviction upon that finding. It found

defendant understood the nature of the charges, possible penalties, and his rights, and that he made the plea freely and voluntarily. The State nol-prossed the other counts.

¶ 11    Defendant filed a *pro se* motion to withdraw his guilty plea, arguing he was pressured to take the plea deal due to comments from the trial judge, the State, and his own attorney.[3] The court appointed a public defender to represent defendant on his post-plea motion. Counsel filed a supplemental motion to withdraw defendant's guilty plea and vacate sentence, arguing certain comments were made to him in order to coerce him into pleading guilty, including a comment by his private defense attorney: "I cannot find your witness. I do not have a defense for this."

¶ 12    The trial court held a hearing on defendant's motion to withdraw his guilty plea. At the hearing, defendant testified that on November 29, 2016, as he was preparing to go to trial, his attorney, Sherman, asked him "how much time" he would be "willing to take." Defendant then had a conversation "in the back" with Sherman and the trial judge. When Sherman "walked out," and defendant was alone with the judge, the judge told defendant if he was found guilty, the judge "[was] going to give [him] 50 years." Sherman told defendant that he should take the time, because "he don't have a defense, he can't defend [defendant]." Defendant claimed the then-prosecuting attorney also told him to "take the time."

¶ 13    Defendant testified he had given his attorney a witness, "Tanesha [*sic*] Barfield," whom he expected to be in court that day, but Sherman told him he was unable to find her. Sherman told defendant on the day of trial he did not have a defense but, prior to that, had "acted as if he had the case under control." While defendant did not have any information for Barfield, Sherman

---

[3] There are two *pro se* motions to withdraw the guilty plea in the record on appeal. One is file-stamped by the circuit court on December 8, 2016 and the other is not stamped. The motions are substantially similar. We refer to the file-stamped motion.

indicated he was investigating Barfield and never told defendant whether or not he had contacted her. Defendant did not want to plead guilty. He did so as he did not feel as if he had a choice because he believed, if he went to trial, his attorney would have let him "g[et] found guilty." On cross-examination, defendant stated he only provided Sherman with Barfield's name, and the "[o]nly information that was – that could have been provided for [his] attorney was through the police reports." Defendant did not give Sherman a phone number or address for Barfield. Asked whether anyone threatened him to plead guilty, defendant stated the judge threatened him. Defendant testified one of the reasons he pled guilty was because he believed he was going to be sentenced to 50 years' imprisonment.

¶ 14     Sherman testified he represented defendant for two to two-and-a-half years, including on the date defendant pled guilty. Sherman discussed defendant's options with him as well as possible trial strategy, and told him "the only way [Sherman] could beat DNA was a jury of people who believed in Trump and didn't believe in science so [he] could show them that it was – science was superstition and that in fact the DNA that was found in the victim's vagina certainly couldn't be [defendant's]." Defendant had given Barfield's name and address to Sherman, but when Sherman went to the address, he was not able to locate her. He testified "[t]he building was gone" and "[w]e couldn't find anybody there who knew her." He told defendant he could not find Barfield and therefore did not have a defense for his case. Nevertheless, Sherman was prepared to defend defendant to the best of his ability, potentially using the defense that the DNA evidence was incorrect and the victim had made a misidentification. Sherman never heard the judge tell defendant he would give him 50 years and never heard the state's attorney say anything to defendant at any time.

¶ 15   On cross-examination, Sherman stated he went to the address defendant provided. The address was also in a police report because Barfield gave the alibi to the police when defendant was initially arrested in 2008. Sherman went to Barfield's address "[a] couple times" before trial and found the building had been demolished. Sherman acknowledged he made no other efforts to try to locate an address for Barfield because defendant "didn't have anything other than the address" and did not know anybody in her family. Sherman did not run Barfield's name through any database.

¶ 16   Mary Innes testified she was the assistant state's attorney who handled defendant's plea on November 29, 2016. Innes never told defendant he should "take the plea," and did not hear the trial judge say to defendant he would give defendant 50 years. Innes was never alone with defendant and never spoke directly to him.

¶ 17   The court denied defendant's motion, noting it was "not sure why [defendant] has filed this motion *** to withdraw his plea of guilty." The court noted that, before the 402 conference, the State's offer was "substantially more" than the 16 years the court asked the State to offer. Further, the court had allowed defendant to meet with his father "over and over" and with his attorney and to have additional time to "talk to the parties" to make an informed decision to enter the plea deal. The court found the record supported defendant made a free and voluntary decision to enter into the plea, and there was no support in the record or testimony "for his notion that he was coerced or under duress in any way."

¶ 18   The trial court did not believe defendant was "manipulated in any way," and believed "he [was] the one who has done the manipulation in this case." It found defendant's allegations against the court, the State, and defense counsel factually unfounded. It also noted defendant had

the opportunity at the time of the plea to answer the court's questions in any way he chose, and he did not raise any of these issues. Reiterating defendant's plea "was voluntary and not the product of any duress or coercion of any kind," the court concluded there was no constitutional violation "whatsoever." The court denied defendant's subsequent motion to reconsider.

¶ 19    Defendant argues on appeal this court should reverse the trial court's decision and remand the case with instructions to grant defendant's motion to withdraw his guilty plea. He contends he pled guilty solely because his defense counsel told him on the day of trial he did not have a defense to present to the jury. Defendant argues counsel's inability to provide a defense was the result of counsel's failure to conduct a reasonable investigation to locate Barfield, defendant's known alibi witness. He contends his decision to plead guilty resulted directly from his counsel's ineffective assistance and his guilty plea, therefore, was neither knowing nor voluntary.

¶ 20    We review the trial court's decision to grant or deny a motion to withdraw a guilty plea for an abuse of discretion. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). An abuse of discretion will only be found "where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *Id*. A defendant does not have an automatic right to withdraw a guilty plea, but rather must show a manifest injustice under the facts involved. *Id*. at 520.

¶ 21    A defendant who pleads guilty waives several constitutional rights, including the right to trial by jury and the right to confront his accusers, and due process of law requires that this waiver be voluntary and knowing. *People v. Williams*, 188 Ill. 2d 365, 370 (1999). "If a defendant's guilty plea is not voluntary and knowing, it has been obtained in violation of due

process and, therefore, is void." *Id*. As stated previously, defendant claims his plea was not knowing and voluntary due to counsel's incompetence.

¶ 22    A challenge to a guilty plea alleging ineffective assistance of counsel is subject to the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Hall*, 217 Ill. 2d 324, 334-335 (2005). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate both that (1) counsel's performance was objectively unreasonable under prevailing professional norms and (2) the deficient performance prejudiced defendant. *People v. Veach*, 2017 IL 120649, ¶ 30. A defendant must satisfy both prongs of the *Strickland* test to raise a successful claim for ineffective assistance of counsel, and failure to satisfy either prong precludes a finding of ineffectiveness. *Id*.

¶ 23    To establish the prejudice prong of an ineffective assistance of plea counsel claim, "the defendant must show there is a reasonable probability that, absent counsel's errors, the defendant would have pleaded not guilty and insisted on going to trial." *Hall*, 217 Ill. 2d at 335. "A bare allegation that the defendant would have pleaded not guilty and insisted on going to trial if counsel had not been deficient is not enough to establish prejudice." *Id*. Rather, the defendant must convince the court that a decision to reject the plea would have been rational under the circumstances. *People v. Boyd*, 2018 IL App (5th) 140556, ¶ 18 (citing *People v. Brown*, 2017 IL 121681, ¶ 41). The question of whether the error caused prejudice to defendant depends in large part on a prediction of whether the defendant would have succeeded at trial. *People v. Pugh*, 157 Ill. 2d 1, 15 (1993). Accordingly, the record should show a reasonable probability, that but for the error, the defendant would have rejected the plea arrangement. *Id*. We need not determine

whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of any alleged deficiencies. *Id*.

¶ 24    We find defendant suffered no prejudice from counsel's alleged failure to make reasonable efforts to locate Barfield, as the evidence does not support a finding of a reasonable probability that defendant would likely not have pled guilty had counsel located Barfield, as defendant had no rational basis to reject the plea under the circumstances. To prove aggravated criminal sexual assault as charged, the State had to prove defendant committed a criminal sexual assault, an act of sexual penetration by making contact between his penis and D.L.'s vagina by the use of force or threat of force, during the commission of "any other felony," here kidnapping. 720 ILCS 5/12-14(a)(4) (West 2008); 720 ILCS 5/12-13(a)(1) (West 2008); 720 ILCS 5/12-12(f) (West 2008). Here, even if Barfield would have testified she was with defendant on the night in question, the parties' stipulation shows D.L. made an immediate outcry to police and a criminal sexual assault kit performed on her at the hospital revealed defendant's DNA on the vaginal swabs taken from her. As the trial court noted in ruling on the earlier motion to dismiss, the effect of the alibi witness is unclear given the DNA evidence implicating defendant.

¶ 25    Further, the stipulation also shows D.L. would have identified defendant in court as one of the men who sexually assaulted her. The testimony of a single credible witness, if positive and credible, is sufficient to convict, even if contradicted by defendant. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Thus, D.L.'s testimony and the DNA evidence would have been ample to convict defendant, even if he were able to locate Barfield and present her during the trial, and he would likely not have succeeded at trial. See *Pugh*, 157 Ill. 2d at 15. Despite defendant's bare assertion he would not have pled guilty otherwise, we find the record does not show a reasonable

probability that, but for counsel's failure to locate alibi witness Barfield, defendant would have insisted upon trial. See *id.*

¶ 26    Further, defendant's claim that he was surprised on the day of trial when his counsel told him he did not have a defense is rebutted by the record. Defendant was present in court multiple times when his attorney informed the court he was unable to locate alibi witness Barfield. Defendant even testified during the hearing on the motion to dismiss that his counsel was unable to locate Barfield and had hired an investigator. Defendant clearly knew counsel had been unable to locate Barfield well before the day of trial, and that he would have no alibi defense to present. Thus, the record rebuts defendant's claim that he pled guilty only because counsel informed him on the day of trial that he could not locate Barfield and, thus, had no defense.

¶ 27    Defendant has failed to show any reasonable probability he would have insisted upon trial but for defense counsel's purported ineffective assistance and, therefore, has failed to demonstrate the prejudice prong of the *Strickland* analysis. See *Hall*, 217 Ill. 2d at 335.

¶ 28    Accordingly, defendant's ineffective assistance of counsel claim fails. As defendant cannot show ineffective assistance of counsel, he cannot show the required manifest injustice necessary to withdraw his guilty plea. See *Delvillar*, 235 Ill. 2d at 520. The trial court did not abuse its discretion in denying defendant's guilty plea. We affirm the trial court's judgment.

¶ 29    Affirmed.