THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee v. JUAN JOHNSON et al., Defendants-Appellants.

First District (1st Division)   Nos. 1—92—2540, 1—92—2541 cons.

Opinion filed May 15, 1995.

480

Daniel J. Stohr, of Chicago, for appellant Juan Johnson.

Dennis M. Doherty, of Chicago, for appellant Henry Johnson.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan R.

Schierl, and Adriana Gardella, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

On September 9, 1989, the Latin Eagles, the Spanish Cobras, the Latin Disciples, and the Campbell Boys got together for a party. The night ended with seven separate fights, one of them resulting in the beating death of Ricardo Fernandez.

Henry and Juan Johnson, brothers, were two of four defendants placed on trial for murder. The Johnson brothers were found guilty of first degree murder in a bench trial that was heard in pieces, starting January 11, 1991, and ending September 27, 1991.

The other two defendants, Hector Franco and Pedro Cordero, were acquitted.

The Johnson brothers, in this consolidated appeal, raise several questions: (1) whether the evidence was sufficient to prove guilt beyond a reasonable doubt; (2) whether they received ineffective assistance of counsel; (3) whether the trial judge unfairly coerced a witness to testify for the prosecution; (4) whether the sentences imposed should be vacated; and (5) whether it was error for the trial judge to refuse to allow them to file and be heard on their post-conviction petitions.

We affirm the convictions and the sentences, but remand the case to the trial judge for consideration of the post-conviction petitions filed by the defendants.

TRIAL EVIDENCE

The trial was protracted and disjointed. We summarize the evidence as it came in.

JANUARY 11, 1991

The bench trial of the four defendants began. Juan Johnson, Henry Johnson, and Hector Franco were represented by the same privately retained lawyer. Pedro Cordero had a separate lawyer. Two witnesses testified.

Patricia Fernandez, the wife of the deceased: The last time she saw Ricardo alive was September 9, 1989, at their home. The next time she saw him was at his funeral, a week later.

Juan Michel: He had been a member of the Latin Eagles street gang for six or seven years. On September 9, 1989, he threw a birthday party for his friend, Edwin Robinson. The party was held at the Caguas Nightclub on North Avenue. More than 200 people attended, many of them members of "friendly street gangs"—the Span-

ish Cobras, the Latin Disciples, the Latin Eagles, and the Campbell Boys.

Michel was collecting a $3 fee at the door from everyone attending the party. He saw the four codefendants enter the club together. He recognized three of them, Franco, Cordero, and Henry Johnson, from the neighborhood.

About 11:30 p.m., a fight broke out between a member of the Spanish Cobras and a member of the Latin Eagles. The fight escalated. Shots were fired inside the club and the club emptied.

Michel went outside. He saw seven fights going on around him. One of the fights closest to him involved the defendants. The area was well lit. At first, he was a half-block away from the fight. Then he walked toward it, getting as close as 15 feet. He saw a man lying on the street. Juan Johnson was hitting the man with a 4 by 4 board. Henry Johnson was striking him with a baseball bat. Cordero and Franco were kicking the man. Franco had some unidentified object in his hands. His attention was diverted when more shots were fired. He then saw the four defendants standing on the south side of the street.

Michel did not speak to the police when they arrived. Later, on September 10, they contacted him. At the police station he picked the four defendants' pictures out of the "gang books" kept by the police. That same evening, at two lineups, Michel identified Juan Johnson, Henry Johnson, and Hector Franco. On September 28, 1989, at a third lineup, Michel identified Pedro Cordero.

MARCH 13, 1991

One witness, Edwin Gomez, testified: When asked if he saw someone outside the Caguas Club with a 4 by 4 board on the night of the party, he said, "I don't remember." The prosecutor asked:

"Q. A few minutes ago you were in the interview room and told me what happened. Isn't that correct?

A. (No response.)

Q. Isn't that correct? Judge, will you please order him to answer the question?"

The trial judge then reminded Gomez he was in court, under oath, and that there were serious penalties for not telling the truth.

The prosecutor again asked questions. Again, Gomez could not remember. The judge suggested that the prosecutor prepare a rule to show cause why Gomez should not be held in contempt. Gomez then was taken to the jury room, while the lawyers argued over how to proceed. The judge decided to break for lunch.

After lunch, Gomez began answering questions.

He saw someone who "looked like" Juan Johnson hitting a man, who was lying on the street, with a 4 by 4 board. He knew Fernandez, but didn't recognize him after the beating because his face was swollen. He did identify a photograph of the man on the street. He later learned that man was Fernandez.

On September 10, 1989, Gomez viewed a lineup. He identified Juan Johnson as the man he had seen with the 4 by 4 board.

MAY 10, 1991

Two witnesses testified.

Armando Mendez: When the fighting broke out, he went outside to look for his wife. He saw a fight, about 100 feet away, where "nine or ten guys" were hitting and kicking a person lying on the ground. Hector Franco was one of the kickers. Henry Johnson was swinging a stick near the person's upper body, but he did not actually see Johnson hit the man with the stick.

Sergeant William O'Donnell: He questioned Henry Johnson at Area 5 headquarters on September 10, 1989. Johnson admitted being at the party and hitting a guy in the face with his fist, but denied involvement in the beating of Fernandez.

JULY 12, 1991

Detective Reynaldo Guevara identified photo arrays and pictures of the lineups that were conducted on September 10 and September 28, 1989.

Two stipulations followed. One was that personnel from the Chicago fire department would testify that around 1 a.m. on September 10, 1989, they took Ricardo Fernandez from the location shown in a prosecution photograph, near 2440 North Avenue, to Illinois Masonic Hospital.

The other stipulation was that Dr. Tae Lyong An of the Cook County medical examiner's office would testify he performed an autopsy on Fernandez on September 11, 1989, and determined that death "was related to cranial cerebral injuries with blunt trauma."

The State rested.

JULY 19, 1991

Defense counsel argued for a directed verdict. It was denied.

SEPTEMBER 24, 1991

Cordero rested without presenting any witnesses.

The Johnsons and Franco presented one witness, Renee Hawkins: On September 9, 1989, she lived at 2444 W. North Avenue, above the Caguas Club. Around midnight she heard lots of noise and looked out

her front window. More than 100 people were in the street. Lots of fights were going on. She saw the Johnson brothers and Franco standing outside the club. About 15 feet from where they stood, a fight was going on. Some people were beating a person on the ground. The Johnsons and Franco were not involved in this fight. (At one point, in response to defense counsel's question, she said these events took place in 1990.)

The defense rested.

SEPTEMBER 27, 1991

The lawyers made closing arguments.

Then the trial judge said:

"I do have one problem. And that is with the action, whether there was really concertive action as to what went on. I believe Juan and Henry did indeed act to kill, with the intent of killing. I have some doubt as to how Franco and Cordero fit into this. The testimony that they were together simply means they were at a party. We have no other evidence save that they were there. And certainly they were not involved as to the allegations in the indictment direct that they be involved."

The trial judge then found Juan and Henry Johnson guilty of first degree murder. Franco and Cordero were found not guilty.

POST-TRIAL PROCEEDINGS

MAY 7, 1992

Each Johnson brother appeared with his own, new lawyer. Their post-trial motions included a claim of ineffective assistance of counsel. After argument, the motions were denied without hearing.

JUNE 11, 1992

This was the date set for sentencing. Each defendant offered motions that were styled as "Supplemental Post-Trial Motion" or, in the alternative, "Post-Conviction Petition." The trial court would not allow the defendants to file their motions.

Then the defendants were sentenced. Each received 30 years' imprisonment.

Seventeen months after the first word of testimony, the case was concluded.

DECISION

THE SUFFICIENCY OF THE EVIDENCE

Any defendant challenging a bench trial conviction on reason-

able doubt grounds has a steep, uphill battle. It has been said many times:

> "It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses." *People v. Novotny* (1968), 41 Ill. 2d 401, 412, 244 N.E.2d 182.

Also see *People v. Kerwin* (1994), 159 Ill. 2d 436, 444, 639 N.E.2d 539.

There have been cases where identification testimony was found so unsatisfactory that bench trial convictions were reversed. (See *People v. Ford* (1990), 195 Ill. App. 3d 673, 553 N.E.2d 33; *People v. Byas* (1983), 117 Ill. App. 3d 979, 453 N.E.2d 1141.) These cases are few and far between.

■ We have examined the evidence in this case to determine whether it was "so unsatisfactory, improbable or implausible as to raise a reasonable doubt as to defendant's guilt." *People v. Ford*, 195 Ill. App. 3d at 675.

Juan Michel and Edwin Gomez placed both Johnsons at the scene of the beating. Michel saw Juan "hitting" someone with a 4 by 4. He saw Henry striking a person on the ground with a baseball bat. Gomez, however reluctant, saw someone who "looks like" Juan using a 4 by 4 on someone on the ground. Gomez was more certain of his identification of Juan at a lineup conducted on September 10, 1989.

Corroboration of the case against Henry came from Armando Mendez, who saw Henry swinging a stick near the upper body of a person lying on the ground.

Circumstantial evidence raised the reasonable and acceptable inference that the "person lying on the ground" was Ricardo Fernandez, the only person beaten to death that night at that place.

We conclude the evidence was sufficient to support the trial judge's guilty findings.

The defendants ask us to examine the trial judge's comments when he convicted the defendants and acquitted Franco and Cordero. We have done that.

The trial judge apparently believed the only evidence against Franco and Cordero was that "they were at a party" and "not involved as to the allegations of the indictment." That recollection was faulty, a fact that proved of benefit to Franco and Cordero, but of little solace for the Johnsons. There is no indication the judge was mistaken about the evidence against the men he convicted.

■ The defendants urge us to consider the line of cases holding

that where the evidence against codefendants is identical in all respects, the acquittal of one defendant must lead to the acquittal of the other defendants. See *People v. Vriner* (1978), 74 Ill. 2d 329, 343, 385 N.E.2d 671; *People v. Beasley* (1976), 41 Ill. App. 3d 550, 353 N.E.2d 699; *People v. Griffin* (1967), 88 Ill. App. 2d 28, 232 N.E.2d 216.

A review of the evidence provides the short answer to the defendants' contention. The evidence against Henry and Juan was not identical in all respects, or even in most respects, to the evidence against Franco and Cordero. The evidence differed in quantity and quality. No one said the acquitted defendants struck the victim with a stick or a bat. Two witnesses placed the Johnsons at the scene of the beating, each brother using some kind of stick, board, or bat while the victim was lying on the ground.

Although we find the evidence against the Johnson brothers sufficient to convict, one further comment is required. The way in which this case was tried, from time to time, over eight months, was not raised as an issue in this case. We do not want to be understood as condoning this kind of piecemeal approach to a felony trial.

### THE EFFECTIVE ASSISTANCE OF COUNSEL

The defendants contend they were deprived of their State and Federal constitutional rights to effective assistance of counsel in three different ways.

First, they say their privately retained lawyer failed to look for and present witnesses whose testimony would tend to exonerate them and that their lawyer ineffectively presented the testimony of the one witness they did have.

Second, they claim their lawyer failed to impeach prosecution witness Edwin Gomez by using available police reports.

Third, they contend their lawyer's joint representation of them and Hector Franco resulted in a prejudicial conflict of interest.

The applicable standard to determine ineffective assistance of counsel comes from *Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693-94, 104 S. Ct. 2052, 2064-65.

It is a two-prong test. First, the defendant must show that his or her lawyer's performance was deficient, falling below an objective standard of reasonableness. This prong requires a showing that counsel made errors so serious that counsel was not functioning in the way guaranteed by the sixth amendment. See *People v. Kerwin* (1994), 159 Ill. 2d 436, 445, 639 N.E.2d 539.

The second prong requires the defendant to show that his or her lawyer's deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the de-

fendant of a fair trial, "a trial whose result is reliable." (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246.) That is, but for the unprofessional errors, the result would have been different. *People v. Staten* (1994), 159 Ill. 2d 419, 430, 639 N.E.2d 550.

When we examine the defense lawyer's conduct, we cannot properly inquire into areas involving the exercise of judgment, discretion, or trial tactics. *People v. Mitchell* (1984), 105 Ill. 2d 1, 12, 473 N.E.2d 1270.

The right to effective assistance of counsel entitles an accused to the undivided loyalty of his or her lawyer, free from conflicting interests or inconsistent obligations. (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 525 N.E.2d 30.) But the joint representation of criminal defendants by a single attorney does not, by itself, violate this right. To prevail on a claim of ineffective assistance of counsel based on joint representation by a single attorney, where the trial court was not apprised of a potential conflict, a defendant must show an actual conflict of interest at trial. *People v. Mahaffey* (1995), 165 Ill. 2d 445, 456.

The mere availability of a strategy that would have helped one criminal codefendant at the expense of another does not create hostility between their interests. (*People v. Echols* (1978), 74 Ill. 2d 319, 327-28, 385 N.E.2d 644.) Our courts will not overturn a conviction based on hypothetical conflicts. *People v. Berland* (1978), 74 Ill. 2d 286, 301, 385 N.E.2d 649.

With these principles in mind, we have examined the trial record. The record does not support the defendants' contentions.

■ There is no evidence that other, helpful witnesses existed. We cannot speculate or move beyond the record.

The fact that the sole defense witness testified to the wrong year does not indicate ineffectiveness. That kind of mistake happens in trials. No one was misled or even made a point of it.

The record does not support the claim that the defendants' lawyer neglected an opportunity to impeach Gomez. The police report we are pointed to does not directly address the witness' trial testimony.

Nor do we find any actual conflict of interest. The jointly represented defendants mounted a united front defense, a denial that they took part in the fatal beating. The Johnsons now say they could have presented a defense based on differing physical characteristics. That does not rise to the level of actual conflict. We will not use hindsight to pick through the record for what might have been.

The defendants were not denied the effective assistance of counsel at their trial.[1]

## THE CLAIM OF UNFAIR COERCION OF A PROSECUTION WITNESS

The trial judge did no more than remind Edwin Gomez he was under oath, subject to the penalties for perjury. At one point, as Gomez's memory continued to fade, the judge suggested the prosecutor prepare a rule to show cause against Gomez.

This is not a case where the trial judge interfered with a defense witness. (See *Webb v. Texas* (1972), 409 U.S. 95, 34 L. Ed. 2d 330, 93 S. Ct. 351.) Nor did the trial judge try to intimidate the witness into testifying in a certain way that would injure the defendants. See *People v. Zaccagnini* (1963), 29 Ill. 2d 408, 194 N.E.2d 286.

■ The trial judge simply warned the witness of his obligation to tell the truth. That is less than the trial judge did in *People v. Davis* (1980), 88 Ill. App. 3d 265, 410 N.E.2d 533. There, the trial judge declared two of the State's witnesses hostile and warned them that if their answers substantially differed from prior sworn testimony they could be charged with perjury and contempt of court. Those admonitions were held to be informative, not threatening or intimidating. Also see *People v. Young* (1992), 231 Ill. App. 3d 40, 596 N.E.2d 69.

The trial judge in this case did not violate the defendants' right to a fair trial when he admonished Gomez.

## THE SENTENCES IMPOSED ON THE DEFENDANTS

Each of the Johnson brothers was sentenced to 30 years' imprisonment. They contend the trial judge did not appropriately consider their youth and lack of prior convictions, or their potential for rehabilitation. In addition, they say the trial judge violated their due process rights when he considered that the beating death was motivated by gang rivalry.

●5 The sentence is within statutory limits. We see no abuse of discretion. (See *People v. Hattery* (1989), 183 Ill. App. 3d 785, 539 N.E.2d 368.) The trial judge balanced factors in mitigation and aggravation when he sentenced the defendants.

---

[1]Neither before nor during the trial did the defendants or their lawyer indicate to the trial judge that there was any potential conflict of interest in this case. The trial judge was not required to ask. (See *People v. Berland* (1978), 74 Ill. 2d 286, 305, 385 N.E.2d 649.) We note, however, that a trial judge is not barred from explaining to defendants the possible perils of joint representation. Obtaining an informed waiver in these situations would reduce the number of times this kind of issue is raised on appeal.

During sentencing, the trial judge said: "I really don't know why this crime occurred except that it was the product of gang activity." That was an accurate statement. A sentencing judge is not required to distinguish between friendly and unfriendly gangs. Besides, seven fights, periodic gunshots, and a fatal beating do not bespeak amity.

We see no reason to disturb the sentence.

## THE "SUPPLEMENTAL" POST-TRIAL MOTIONS OR POST-CONVICTION PETITIONS

On the day of sentencing, the defendants' new lawyers presented documents entitled "Supplemental Post-Trial Motion" or "Post-Conviction Petition." The motions contained affidavits concerning trial counsel's failure to investigate and locate exculpatory witnesses. An evidentiary hearing was requested. The trial judge refused to allow the defendants permission to file the motions.

On appeal, the defendants concede their motions came too late to qualify as post-trial motions, but they contend they had a right to file and be heard on their post-conviction petitions. We agree. A convicted person may bring an action under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1992)) before sentencing. (*People v. Martin-Trigona* (1986), 111 Ill. 2d 295, 489 N.E.2d 1356.) The allegations in the petitions concern matters outside the record on appeal. They could not have been raised on direct appeal. See *People v. Smith* (1994), 268 Ill. App. 3d 574, 578, 645 N.E.2d 313; *People v. Coleman* (1994), 267 Ill. App. 3d 895, 898, 642 N.E.2d 821.

On remand, we direct the trial court to allow the defendants to file their post-conviction petitions. A hearing should be conducted on the defendants' claim that their lawyer's failure to inquire into the existence of exculpatory witnesses deprived them of the effective assistance of counsel. See *People v. Morris* (1992), 229 Ill. App. 3d 144, 165, 593 N.E.2d 932.

## CONCLUSION

The convictions and sentences of Juan and Henry Johnson are affirmed. The cause is remanded to the trial court for the filing of post-conviction petitions and a hearing on the claim that defense counsel failed to inquire into the existence of exculpatory witnesses.

Affirmed and remanded with directions.

CAMPBELL, P.J., and BUCKLEY, J., concur.