Sixth Division
July 25, 2008

No. 1-06-2557

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 03 CR 23536 |
| | ) | |
| EDDIE HARRIS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Bertina E. Lampkin, |
| | ) | Judge Presiding |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Defendant Eddie Harris appeals the trial judge's denial of his motion to vacate his guilty plea, arguing that he was denied his due process right to a fair hearing on his motion where the trial judge relied on her own recognition of events rather than the evidence before her, acted as an advocate for the State, made credibility determinations prior to the end of the testimony, prevented the defense from presenting evidence to support its claim, and relied on her own emotional reaction to the offense.

In October 2003, defendant and codefendant Duane Roach were charged with 16 counts of murder in connection with the repeated rape and beating death of Lori Roscetti on October 18, 1986. On December 16, 2004, defendant and codefendant Roach each agreed to plead guilty to one count of murder (count VI), *i.e.*, murder executed during the course of a criminal sexual assault and committed in an exceptionally brutal and heinous manner, in exchange for a 75-year extended-term sentence, 3 years of mandatory supervised release (MSR), and the dismissal of the remaining charges. Defendant was represented by Assistant Public Defender (APD) LaFonzo

Palmer at the plea hearing and codefendant Roach was represented by APD Tony Eben. The trial judge specifically asked defendant if that was his "understanding of the offer," to which defendant replied, "yes."

Prior to accepting defendant's plea, the trial judge admonished him that the murder counts carried a possible sentence of 20 to 40 years with a MSR term of 3 years. The judge also admonished him that he was eligible for an extended-term sentence, whereby he could be imprisoned for up to 80 years and serve 3 years of MSR. The judge further advised defendant that he could be found eligible for the death penalty or life imprisonment on some of the charges that had been filed against him.

The trial judge advised defendant that he had "the right to continue to plead not guilty and to require the State to prove [him] guilty beyond a reasonable doubt" as well as the right to plead guilty. When asked if he understood that, defendant said, "yes." Defendant stated that he understood what a jury trial and bench trial were and that he had a right to a bench or jury trial, but wished to give up those rights. Defendant then signed a jury waiver, which the trial court accepted. The judge informed defendant that by pleading guilty, he was giving up the right to confront witnesses and to call witnesses in his defense as well as the right to testify in his own defense or remain silent. The trial judge then asked the following questions of defendant.

"THE COURT: To each of you, are you pleading guilty

freely and voluntarily, Mr. Harris?

DEFENDANT HARRIS: Yes.

***

2

THE COURT: Each of you have any threats, force or promises of any kind aside from the State's offer been directed against you in order to make you plead guilty, Mr. Harris?

DEFENDANT HARRIS: No."

The trial judge found that defendant understood the charges against him, the possible penalties that could be imposed, and that he was freely and voluntarily pleading guilty to murder under count VI.

The State offered the following factual basis.

Allen Radner would testify that in the early morning hours of October 18, 1986, at approximately 1 a.m., he walked Lori Roscetti to her car after studying late for medical school finals in the school library. David Sachs would testify that he was a railroad security officer and at approximately 4:40 a.m. on October 18, 1986, he discovered the "horribly beaten and still bleeding body" of Lori Roscetti lying next to her car on the railroad access lane located at approximately 1500 West 15th Place in Chicago.

Roscetti was pronounced dead at the scene. Joanne Richmon would testify that she was an assistant medical examiner in 1986 and she performed the autopsy on Roscetti. Roscetti was 23 years old at the time of her death and the cause of death was multiple blunt force trauma. She would testify that "virtually every bone in [Roscetti's] face was shattered, including her sinuses, her hyaloid bone, her Adam's apple[,] that [Roscetti] had been brutally stomped on, and that the medical examiner also saw the bloody shoe prints on her torso." Additionally, "there were multiple fractures of her rib cage, her torso was also torn by multiple lacerations, revealing that a

sharp pointed object had been repeatedly shoved through her skin."

DNA analysts would testify that they performed numerous tests from the rape kit swabs, Roscetti's clothing, and hairs found on her clothing and in the car. These analysts would testify that "the vaginal swab was positive for Eddie Harris' DNA; the rectal swab was positive for both Harris' and Roach's DNA; that [Roscetti's] coat had seven semen stains on it belonging to [codefendant Roach]. In addition, there were semen stains on her jacket from Roach, her jogging pants from defendant and Roach including a mixture from both, her shirt from Roach and a mixture from both, her left shoe from defendant and a mixture from both, and on her underwear from Roach. Another DNA analyst would testify that three pubic hairs were recovered from the crime scene and Roscetti's clothes, two were from Roach and one was from defendant. Additionally, a fingerprint examiner would testify that partial fingerprints from the interior door of Roscetti's car were a match to defendant's fingerprints.

A police detective would testify that in January 2002, he spoke with Bernard Roach, codefendant Roach's brother. Bernard revealed that he knew the identity of Roscetti's killers and then an investigation focused on defendant and codefendant Roach.

Bernard Roach would testify that in late 1986, he was walking with his brother, codefendant Roach, and defendant near the crime scene. There were many reward posters up seeking information on Roscetti's murder. As they were walking, codefendant Roach pointed to one of the posters and said to Bernard that they did that, "Me and Eddie did that, and she was a tough bitch to kill." Bernard would further testify that "nothing else was said and that he never thought it was true until he saw the DNA exclusions and two profiles that kept coming up."

Lieutenant Joseph Murphy would testify that defendant was arrested on February 4, 2002, and he gave oral admissions and both he and codefendant Roach gave separate reenactment videos. In the reenactment video, they said they were looking for cars to break into to get money to buy crack cocaine. They came upon Roscetti, who was parked behind her building, searching for something in her car. They came up behind her, jumped her and abducted her. They drove her car to the place where she was murdered.

The State would also introduce the videotaped confessions from both defendant and codefendant Roach. The videotaped confessions would show that they abducted Roscetti and forced her into the backseat. She was held down so she could not escape or cry out. She was crying, shaking and begging to be let go. They took her to an isolated railroad access lane. They took turns raping her. Afterward, she begged to be let go and said she would give her money to them. They beat her, her face was crushed with a concrete brick or rock and her neck was repeatedly slammed in the door.

APD Palmer stipulated to these fact and that the chain of custody was maintained for all exhibits and DNA testing. The trial judge found a sufficient factual basis for defendant's plea and entered the judgment.

Before sentencing defendant to the agreed extended term of 75 years with a 3-year MSR term, the trial judge asked defendant if he wished to say anything. Defendant replied, "no." The State offered defendant's prior criminal background to the trial judge, which included two prior burglary convictions and a theft conviction. The judge then imposed the agreed sentence.

On January 14, 2005, defendant mailed a *pro se* "Motion for Reduction of Sentence," but

5

it was not file-stamped by the clerk of the circuit court until March 22, 2005. Defendant alleged that APD Palmer told defendant "to plead guilty because [defendant's attorney] did not want to go to trial because [defendant's attorney] could not win. Defendant also said that APD Palmer told him that he "would only have to do 20 years before [he] was released."

On April 1, 2005, the trial judge placed defendant's case on her call. Since APD Palmer was unavailable, another public defender appeared. The judge noted that the motion was postmarked within 30 days of defendant's guilty plea and was timely. The judge reset defendant's case for later in order to give APD Palmer an opportunity to speak with defendant to see if defendant still wished to litigate the motion. On April 14, 2005, defendant sent a second *pro se* "Motion for Order Correcting Omission in Previous Order," in which defendant alleged that the mittimus failed to show that defendant was sentenced under the sentencing laws in effect in 1986 and therefore he "is entitled to serve 37.5 years."

On April 21, 2005, APD Palmer appeared before the trial judge to discuss defendant's *pro se* motions. APD Palmer indicated that he thought defendant was concerned with the anticipated parole date, which had shown as 100% of defendant's sentence, but defendant was entitled to receive day-for-day good-time credit. APD Palmer stated that defendant had called him to say the matter had been resolved. The judge asked APD Palmer to talk to defendant to see if defendant was satisfied. At the next court date on July 21, 2005, APD Palmer told the trial judge that defendant wanted his sentence reduced or, in the alternative, to withdraw his guilty plea.

On November 16, 2005, defendant appeared before the trial judge and APD Palmer filed

6

a "Motion to Withdraw Plea of Guilty." The trial judge noted that the issue initially raised by defendant concerning the representation by APD Palmer that defendant would only have to serve 20 years would necessitate APD Palmer being a witness and *sua sponte* ordered him to withdraw from the case. The judge then learned that defendant had prepared a *pro se* motion to have new counsel appointed.

On December 15, 2005, APD Timothy Leeming appeared on defendant's behalf. On February 22, 2006, on defendant's behalf, APD Leeming filed an "Amended Motion to Withdraw Guilty Plea," and then on April 11, 2006, he filed a "2nd Amended Motion to Withdraw Guilty Plea." Defendant alleged that his plea was involuntary as "the product of coercion and ineffective assistance of his trial counsel." The motion stated that he pled guilty based on false representations by APD Palmer that he would only have to serve 20 years before being released. He also raised additional claims of ineffectiveness against APD Palmer, such as, he failed to obtain a separate trial for defendant, he did not review with defendant the evidence against him, he told defendant that the plea was a "package deal" for all defendants on the case, and he "screwed up the paperwork."

On May 15, 2006, the State filed a motion to dismiss defendant's motion to withdraw his guilty plea. The State argued that defendant's motion was untimely since it was filed more than 90 days after the plea hearing and it was an improper motion to reduce sentence, not a motion to withdraw his plea. The State also asserted that defendant's allegations of ineffective assistance were belied by the record and the evidence against defendant was overwhelming. On June 13, 2006, defendant filed a reply to the State's motion to dismiss. He contended that his original

postplea filing was mailed within 30 days of his plea and was in the nature of a motion to withdraw his plea.

On August 8, 2006, the trial judge conducted an evidentiary hearing on defendant's motion to withdraw his guilty plea. The following evidence was presented at the evidentiary hearing.

Defendant testified on his own behalf. Defendant stated that he met with APD Palmer "under 12 times." He said that his attorney kept telling him that he was not going to the win the case and to "cop out." On the day of the plea hearing, defendant met with his attorney in the bullpen along with codefendant Roach and Roach's attorney, APD Eben. Defendant told his attorney that he was going to plead not guilty and his attorney said "it was a package deal. That [defendant and codefendant Roach] both had to take it or it was no deal." According to defendant, APD Palmer described the deal as "[a]bout 75 years, and he said by the case being so old after 20 years we go in front of the parole board, which [defendant] found out all that was a lie." Defendant said APD Eben agreed with what APD Palmer told defendant about serving 20 years. After speaking with his wife, defendant decided to accept the plea and when the trial judge sentenced him to 75 years, he believed he was only going to serve 20 years. When defendant first got to prison, his first calculation sheet was at 100%, but it was corrected and recalculated to 50%. When asked by his attorney if he would have pled guilty if not for the expectation that he would only serve 20 years, defendant said he would not have pled guilty and would have gone to trial.

On cross-examination, defendant admitted that the State was seeking the death penalty

against him and that he could have been sentenced to natural life in prison. Defendant also said he knew the first offer was for 80 years, but APD Palmer told defendant he would try to get 65 before the offer was agreed to at 75 years. He also acknowledged that he told the trial judge the he understood the offer, the right to plead not guilty, and the difference between a bench and jury trial. He agreed that he told the trial judge that his plea was entered freely and voluntarily. Defendant admitted that the trial judge never mentioned him only serving 20 years nor did he ask the trial judge about serving 20 years. When asked what he believed day-for-day good time credit was, defendant answered that, "You get credit for the days you were at the county."

The trial judge questioned defendant about a letter, dated January 18, 2005, that defendant sent to APD Palmer. The trial judge read the letter in which defendant complained that APD Palmer "and Chandra" had him take the deal, but "all [his] paperwork say [defendant is] under the 100 percent law and [APD Palmer and defendant] know [defendant is] under the 50 percent." The judge asked defendant who "Chandra" was and defendant answered that was his wife. Defendant admitted he wrote the letter.

Codefendant Duane Roach testified for defendant. Roach stated that on December 16, 2004, he was in the bullpen with his attorney, defendant and defendant's attorney. Roach and defendant had decided to reject the offer of 75 years. Roach said that APD Palmer "got a little offended." According to Roach, APD Palmer told them that if they take the 75 years, they would get to "go to the board in 20 years" and every year thereafter. Roach did not believe APD Palmer, but he asked his attorney, APD Eben, and he agreed with what APD Palmer had said.

On cross-examination, the State questioned Roach about why he did not raise this issue in

9

his postconviction petition. The trial judge then looked over Roach's postconviction petition and pointed out to the State that Roach had alleged that he was misled about that he would go to the parole board every year after he served the first 20 years. Roach acknowledged that he did not ask the trial judge about only serving 20 years. He said he thought that would happen later in prison. Roach also admitted that his attorney told him he would serve half of the 75 years.

Defendant then rested on his motion.

APD LaFonzo Palmer testified for the State. He stated that he is employed by the Cook County public defender's office as an APD. He was assigned to represent defendant in January 2004. He visited defendant four times at the jail and talked to him at every court date. He discussed the evidence with defendant numerous times. Other than the first visit, APD Palmer and defendant talked about a plea during his visits. APD Palmer told defendant he was "more than willing to try the case." He went over the pros and cons of the case. He told defendant that they had "some very, very nasty pictures" and DNA in addition to testimony from codefendant's brother.

He discussed the possibility of getting a term of years in prison rather than the death penalty with defendant. They talked about how long defendant would have to serve. APD Palmer frequently reminded defendant that he was "old time," meaning he could serve 50% under the law in 1986. He denied ever telling defendant that he would serve 20 years and then be eligible for parole. On the day of the plea hearing, defendant asked him about indeterminate sentencing, which was in place before APD Palmer was a lawyer. He asked Roach's attorney, APD Eben, about it since he was a more seasoned attorney. They got an old statute book and

explained indeterminate sentencing to defendant, but also said it did not apply to defendant. APD Palmer said under the old law with indeterminate sentencing a defendant would "get a sentence 20 to whatever and then the parole board would decide from there when you got out."

On cross-examination, APD Palmer stated that he had been with public defender's office for 19 years. He admitted that this was the biggest case he worked on because of the publicity.

APD Tony Eben testified for the State. He stated that he has worked for the public defender's office for 21 years. He represented codefendant Roach in this case. On the day of the plea hearing, he was meeting with Roach while APD Palmer was talking to defendant. They were discussing the plea offer of 75 years. He explained to Roach that "he would be given day for day time, but he would not serve all the 75 years, but would be have [*sic*] to do half of it."

APD Eben testified that defendant expressed some concern as to whether the applicable statute would make him eligible to see the parole board after 20 years. APD Eben reviewed the statute and told Roach, in defendant's presence, that if they took the offer, they would have to serve 50%. He told them the old statute did not pertain to them and they would not be eligible for parole after serving 20 years. He denied telling either Roach or defendant that they would be eligible for parole after 20 years.

The State rested and entered certified copies of prior convictions of both defendants for impeachment. Following arguments, the trial judge denied defendant's motion to withdraw his guilty plea. The judge found the testimony from APD Palmer and APD Eben to be credible and said that defendant and codefendant Roach were "liars."

This appeal follows.

1-06-2557

On appeal, defendant argues that he was denied a fair hearing on his motion to withdraw his guilty plea because the trial judge acted as an advocate for the State, relied on her own recognition of events rather than the evidence before her, made credibility determinations prior to the end of the testimony, relied on her own emotional reaction to the offense, and prevented the defense from presenting evidence to support its claim. The State maintains that defendant's hearing shows the absence of any legal bias by the trial judge.

Defendant asserts that we should apply a *de novo* standard of review because "the issue is whether the record shows that the defendant received a fair hearing" since "there is no decision for this Court to be deferential toward." See People v. Foskey, 136 Ill. 2d 66, 76 (1990) (reviewing a motion to quash arrest *de novo* "[w]hen neither the facts nor the credibility of the witnesses is questioned"). "However, it is an abuse of discretion for a trial judge to assume the role of an advocate" and "[t]he appropriate scope of questioning is determined by the facts and circumstances of the case." People v. Taylor, 357 Ill. App. 3d 642, 647 (2005); see also People v. Smith, 299 Ill. App. 3d 1056, 1064 (1998). Moreover, "the decision whether or not to allow a defendant to withdraw his guilty plea is a matter within the discretion of the trial court and will not be disturbed absent an abuse of that discretion." People v. Manning, 227 Ill. 2d 403, 411-12 (2008). We disagree with defendant and will apply an abuse of discretion standard in this case.

"The Illinois Supreme Court has held that a fair trial is a fundamental right in all criminal prosecutions and that a denial of this right is a denial of the procedural due process guaranteed litigants under both the United States (U.S. Const, amend. XIV) and Illinois (Ill. Const. 1970, art. I, § 2) Constitutions." Taylor, 357 Ill. App. 3d at 647. " 'The right of a defendant to an

12

unbiased, open-minded trier of fact is so fundamental to our system of jurisprudence that it should not require either citation or explanation.' " Taylor, 357 Ill. App. 3d at 647, quoting People v. Eckert, 194 Ill. App. 3d 667, 673 (1990). In Taylor, the reviewing court concluded that the fair trial guaranty applied equally to an evidentiary hearing on a postconviction petition. Taylor, 357 Ill. App. 3d at 648. While the instant case does not pertain to a postconviction petition, we agree that the due process right to a fair hearing does extend to an evidentiary hearing on a motion to withdraw a guilty plea.

Defendant's first contention is that the trial judge improperly relied on her own memory of the plea hearing rather than the testimony presented to her at the hearing on the motion to withdraw the guilty plea. However, defendant fails to cite any authority to support his argument that a trial judge is not allowed to use his or her own recollection of a previous hearing that he or she conducted and is part of the instant record. Rather, the cases cited by defendant, People v. Wallenberg, 24 Ill. 2d 350, 354 (1962), People v. Yarbrough, 93 Ill. 2d 421, 428-29 (1982), and People v. Dameron, 196 Ill. 2d 156, 171 (2001), all pertain to instances in which the trial judge considered his or her own private knowledge outside the record or conducted a private investigation. None of these cases held that a trial judge cannot rely on his or her own memory of prior proceedings conducted in the same case. Supreme Court Rule 341(h)(7) provides that an appellant's brief must contain his contentions and the reasons therefor, accompanied by citation of the authorities and the pages of the record. 210 Ill. 2d R. 341(h)(7); see also People v. Guest, 166 Ill. 2d 381, 414 (1995). Moreover, it is well settled that a contention that is supported by some argument but does not cite any authority does not satisfy the requirements of Supreme

13

1-06-2557

Court Rule 341(h)(7), and bare contentions that fail to cite any authority do not merit consideration on appeal. People v. Nieves, 192 Ill. 2d 487, 503 (2000). While defendant asserts that he cited authority, none of the cases cited related to the issue being raised. Here, the trial judge considered the evidence before her on the record and presented to her at the hearing, there is no error on this issue.

Next, defendant contends that the trial judge acted as an advocate for the State. The applicable principle of law is as follows:

> " 'It is the judge's duty to see that justice is done, and where justice is liable to fail because a certain fact has not been developed or a certain line of inquiry has not been pursued it is his duty to interpose and either by suggestions to counsel or an examination conducted by himself avoid the miscarriage of justice, but in so doing he must not forget the function of the judge and assume that of the advocate.' " People v. Rega, 271 Ill. App. 3d 17, 23 (1995), quoting People v. Lurie, 276 Ill. 630, 641 (1917).

"There is a line of judicial propriety, and it ' "is clearly crossed when the judge departs from his function as a judge and assumes the role of prosecutor." ' " Taylor, 357 Ill. App. 3d at 648, quoting Rega, 271 Ill. App. 3d at 24, quoting People v. McGrath, 80 Ill. App. 2d 229, 236 (1967). "It is not *per se* error for a trial judge to question a witness." People v. Smith, 299 Ill. App. 3d 1056, 1062 (1998). "Nor does a trial judge 'assume the role of prosecutor merely because [his] questions solicit evidence material to the State's case.' " Smith, 299 Ill. App. 3d at

14

1-06-2557

1062, quoting People v. Sutton, 260 Ill. App. 3d 949, 959-60 (1994). Further, "[i]t is well settled that a trial judge has discretion to question a witness 'to elicit the truth or to bring enlightenment on material issues which seem obscure,' as long as he does so in a fair and impartial manner." Smith, 299 Ill. App. 3d at 1062, quoting People v. Wesley, 18 Ill. 2d 138, 154-55 (1959). The facts and circumstances of the case determine the proper scope of the trial court's questioning. Taylor, 357 Ill. App. 3d at 649. In nonjury proceedings, prejudice is shown when the strain of the trial judge's questioning indicates that the judge has prejudged the outcome of the hearing. Taylor, 357 Ill. App. 3d at 649.

In the present case, the trial court questioned defendant about a letter sent by defendant to APD Palmer following his guilty plea. The questioning proceeded as follows:

"THE COURT: I want you to look at this. It's Court's Exhibit Number 1. It's a document that I was given by either the State or the defense. It's dated January 18, 2005.

First, you pled guilty in front of me December 16, 2004, correct?

DEFENDANT: Yes.

THE COURT: I have a letter dated January 18, 2005, just about a month later. I want you to look at that. It's Court's Number 1. It's a [X]erox copy. It has a [X]erox copy of an envelope. Envelope says that it's from Eddie Harris to LaFonzo Palmer.

15

I want you to look at every page of it and tell me if you wrote this letter. Did you write that letter?

DEFENDANT: Yes.

THE COURT: Can I have it back? I am just going to read the first few words of it. This is your letter in its entirety, correct?

DEFENDANT: Yes.

THE COURT: January the 18th, 2005, just a month after you pled guilty in front of me. It says: 'Dear Mr. Palmer: I told Chandra.' I am going to ask a question. Who is Chandra?

DEFENDANT: My wife.

THE COURT: 'I told Chandra to get in touch with you and tell you what had happened' —I am reading it just the way it is. 'What had happened while I was in Stateville, but now I am in Menard. You and Chandra had me take that deal and now I am being f---ed on the deal. All my paperwork say I am under the 100 percent law and you and I know I am under the 50 percent?'

Did you write that, sir?

DEFENDANT: Yes, I did.

THE COURT: So, you go on — there was not a period there; I just paused. And it goes on: 'So I wish you get on your job and get my paperwork done right or you could go back in front of

16

Lampkin and tell her I want to change my plea and go to trial because they got my out date calculated at 100 percent and it is 2077, so I might well go to trial and fight because I will never live to be 115 years old, and I don't want to hear it's too late to change my plea neither because I am in phase one, which I can't call no one until I get a PIN number, which I am I haven't got yet [*sic*]'

There was no period until the end of that.

That was all one statement. You wrote that, sir?

DEFENDANT: Yes, I did."

Defendant asserts that "this line of questioning went beyond simply clarifying confusing testimony and shows that the judge did not remain as an impartial arbiter." In defendant's view, these questions were the trial judge's intent to impeach defendant regarding his wife's insistence that he plead guilty and arose out the judge's impatience with the State's cross-examination.

The subject letter had been attached to a document filed with the trial judge and was part of the record before the judge. Earlier in his testimony, defendant admitted that he did not write his initial motion to reduce sentence. In this questioning, the judge wanted to clarify whether defendant had prepared the letter sent to APD Palmer. The judge's questions came after redirect examination and the State had indicated it had no further questions for cross-examination. Nothing in the questions asked showed that the trial court had prejudged defendant's case nor was she acting as an advocate for the State. Rather, the judge was seeking to determine the legitimacy of defendant's allegation that APD Palmer told defendant he would only serve 20

17

years of his sentence. We conclude that the trial judge did not act as an advocate for or display any bias for the State in this line of questioning.

Defendant next argues that the trial judge made credibility determinations prior to the conclusion of the evidence. "A defendant has a constitutional right to an unbiased, open-minded trier of fact." People v. West, 294 Ill. App. 3d 939, 947 (1998). " 'Pre-judgment is the antithesis of a fair trial' because a defendant is entitled to a fair and impartial trial before a court which does not render judgment until after trial." West, 294 Ill. App. 3d at 947, quoting People v. Johnson, 199 Ill. App. 3d 798, 806 (1990). However, in order to demonstrate bias or prejudice by the trial judge, the record must establish that "there was an active personal animosity, hostility, ill will, or distrust toward the defendant." West, 294 Ill. App. 3d at 947; see also People v. Jackson, 250 Ill. App. 3d 192, 203 (1993).

Here, defendant points to two instances in which the trial judge interrupted defendant's testimony. In the first instance, defendant had testified that right before pleading guilty "I hesitated for a minute, then I came up in front of the judge and then that's when we had commotion and that's when the judge let me talk to my wife and everything." The judge interjected, "You said a commotion. I was here, so I would certainly like to know what you mean by 'commotion.' I was here and nothing happened other than you asking to speak to your wife." Defendant responded that "the commotion was we got a friend up here. I was hesitating whether I should take it or take the deal or not until after I talk [*sic*] to my wife. Then I decided to go and take it." The second time the trial judge interrupted was after defendant had just stated that he spoke with his attorney in the back of the courtroom "less than ten minutes." Then, the

18

judge said, "Now remember, I was here, sir. Remember I was here the day you pled guilty. So I know how long Mr. Palmer and Mr. Eben were here before I took the plea. Remember that."

Neither of these instances shows that the trial judge had any animosity or ill will toward defendant nor do they demonstrate that the judge had made a credibility determination prior to trial. In the first example, the judge was seeking to clarify what defendant meant when he said "commotion." The judge asked what he meant and after he answered, nothing more was said regarding it. We also do not find that the second instance amounted to a credibility determination. Rather, the statements, though inartfully phrased, amounted to a warning about the circumstances of defendant's plea hearing. Though defendant contends that such a warning shows the judge had found defendant to be untruthful, we do not agree.

In People v. Johnson, 272 Ill. App. 3d 479, 482 (1995), the trial judge reminded a prosecution witness that he "was in court, under oath, and that there were serious penalties for not telling the truth." The prosecutor continued to question the witness, but he continued to respond that he could not remember. The judge then "suggested that the prosecutor prepare a rule to show cause why Gomez should not be held in contempt." Johnson, 272 Ill. App. 3d at 482. The court broke for lunch and when the case was recalled, the witness began answering questions. On appeal, the defendant claimed that this amounted to unfair coercion of a prosecution witness. The reviewing court found that the trial judge's behavior did not deprive the defendant of a fair trial because the judge's actions "simply warned the witness of his obligation to tell the truth." Johnson, 272 Ill. App. 3d at 488. While we are mindful that the situation in the instant case involves comments made to defendant while testifying, we conclude

that the trial judge's statement was a warning and not an indication by the judge of her determination that defendant's testimony was not credible.

Defendant also contends that the trial judge "made the assessment that the defendant was capable of understanding legal terminology before hearing testimony regarding the issue." Defendant complains that the trial judge sustained an objection when his attorney questioned APD Eben about his training in criminal law and the classes he had taken to pass the bar exam. His attorney argued that the testimony was relevant to show that attorneys understand the legal terms discussed after years of practice and an advanced education, but criminal defendants might not have the same understanding. The trial judge ruled that she had not "heard any term, 20 years, 50 years, 75 years, 50 percent, 20 years and they go before the parole board. None of those are complicated. I think a high school student could understand what 50 percent is."

The State responds that the trial judge's ruling on the State's objection was proper because there was no nexus between what classes APD Eben took in law school to defendant's understanding of legal terminology and also that defendant has not presented a theory that he did not understand what his attorney told him; rather, defendant claims that his attorney misinformed him that he would be eligible for parole after 20 years. We agree with the State. The criminal law classes taken by APD Eben had no relevance as to whether defendant's plea was involuntary because his attorney told him he would only serve 20 years. Defendant never testified that he did not understand the legal terms being used by his attorney and APD Eben. APD Eben's testimony, which followed defendant's testimony, had no bearing on defendant's understanding of legal terminology.

Next, defendant asserts that the trial judge prevented him from presenting evidence to support his claim. Specifically, defendant argues that the judge improperly limited the cross-examination of APD Palmer on questions regarding the enormity of the case and the large amount of work APD Palmer would have had to undertake in taking the case to trial. Defendant maintains that this testimony was relevant to show APD Palmer's state of mind as well as a potential bias. The State responds that this argument is without merit and the trial judge was within her discretion to limit "this unfounded and harassing cross-examination."

A defendant's right to confront witnesses against him, including cross-examination for the purpose of showing any interest, bias, prejudice or motive to testify falsely is guaranteed by both the federal and state constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8. A defendant's right to confrontation includes the right to cross-examine. People v. Blue, 205 Ill. 2d 1, 12 (2001); Douglas v. Alabama, 380 U.S. 415, 418, 13 L. Ed. 2d 934, 937, 85 S. Ct. 1074, 1076 (1965). However, "[t]he trial court has discretion to impose reasonable limits on cross-examination to limit possible harassment, prejudice, jury confusion, witness safety, or repetitive and irrelevant questioning, and we review a defendant's claim of a violation of the confrontation clause under the abuse-of-discretion standard." People v. Tabb, 374 Ill. App. 3d 680, 689 (2007). "A judge may limit the scope of cross-examination, and unless the defendant can show his or her inquiry is not based on a remote or uncertain theory, a court's ruling limiting the scope of examination will be affirmed." Tabb, 374 Ill. App. 3d at 689.

Here, when defendant's attorney questioned APD Palmer "about how high the pile of transcript documents" were in his office, the State objected. Defendant's attorney stated that he

wanted to explore APD Palmer's bias, but the trial judge sustained the objection and found that defendant's attorney could not "imply that [APD Palmer] was not willing to do the work" when defendant never made that claim. Defendant's attorney went on to ask APD Palmer about his caseload at the time of defendant's plea, whether the State was ready to go to trial and start right away, and how long he thought the trial would last. APD Palmer answered that he was assigned under 50 cases at the time, he did not expect to start the trial right away and he estimated the trial would have lasted two weeks. Defendant also includes the previously discussed cross-examination of APD Eben regarding his training in criminal law as an improper limitation on cross-examination. Defendant concedes that he "did not specifically claim that defense counsel did not want to do the work related to taking the case to trial, that line of questioning was certainly relevant to explain why defense counsel may have pressured the defendant into pleading guilty."

We disagree. Defendant never testified that his attorney was unwilling to do the work of trying the case and that he was pressured to plead guilty for that reason. Rather, defendant stated that APD Palmer told him that he could not win because the evidence was very strong against him and defendant should take a plea. APD Palmer admitted that the he told defendant that there were "some very, very nasty pictures" and DNA against defendant. Defendant's attorney's line of questioning regarding APD Palmer's unwillingness to try the case was speculative and uncertain and not based on defendant's claims against APD Palmer. For this reason, the trial judge properly limited the scope of cross-examination.

Finally, defendant contends that the trial judge based her decision on her emotional

reaction to the case. Specifically, defendant claims the judge relied on her own subjective feelings toward the offense in reaching her decision. Defendant points to two comments made in the trial judge's ruling for support. The judge referred to the summary of facts given at the plea hearing as "disgusting," and she later stated, "And thank God for the Roscetti family didn't have to go through this again." According to defendant, "where these comments were made as part of her ruling in denying the motion, it cannot be said that she did not rely on those factors in reaching her decision."

In support, defendant relies on People v. Henry, 254 Ill. App. 3d 899 (1993). Following a jury trial, the trial judge at sentencing stated, " 'This is really a disgusting crime. And that's why you are given this amount of time.' " Henry, 254 Ill. App. 3d at 904. The reviewing court remanded for resentencing because "[b]ased upon the clarity of the trial court's statement, we cannot say that the court did not rely upon its own opinion of the crime when it sentenced defendant." Henry, 254 Ill. App. 3d at 905.

We find the decision in Henry to be distinguishable. The present case was in a different procedural posture. Defendant had already pled guilty to an agreed sentence, but was seeking to withdraw his plea. This was not a sentencing hearing following a jury trial. Further, unlike the trial judge in Henry, the trial judge did not state that her ruling was based on her belief that the facts were "disgusting." Rather, the trial judge's findings on defendant's motion to withdraw his guilty plea are very thorough and detailed.

In her ruling, the trial judge specifically discussed the credibility of all the witnesses. She found the testimony of both defendant and codefendant Roach to be incredible. In contrast, the

judge ruled that APD Palmer testified "very credibly." She discussed APD Palmer's testimony in detail as well as the testimony of APD Eben. The trial judge also went over the factual basis for the plea. The judge concluded that "there was no misapprehension of the facts or the law. Mr. Palmer clearly told the defendant he served 50 percent. Mr. Eben reiterated that." The two isolated comments were not the basis of the judge's ruling. We find that defendant's argument is without merit.

Nevertheless, even if we had concluded that the trial judge had engaged in improper conduct as alleged by defendant, defendant's motion to withdraw his guilty plea would not have been granted.

"A defendant does not have an absolute right to withdraw his guilty plea [citation], but a defendant should be allowed to withdraw his plea where his plea was not constitutionally entered." Manning, 227 Ill. 2d at 412. "Where ' "the plea of guilty was entered *** in consequence of misrepresentations by counsel *** the court should permit the withdrawal of the plea of guilty and allow the accused to plead not guilty." ' " (Emphasis omitted.) Manning, 227 Ill. 2d at 412, quoting People v. Davis, 145 Ill. 2d 240, 244 (1991), quoting People v. Morreale, 412 Ill. 528, 531-32 (1952). "A defendant may challenge the constitutionality of his guilty plea either by claiming that he did not receive the benefit of the bargain he made with the State or by alleging that the plea of guilty was not made voluntarily or with full knowledge of the consequences." Manning, 227 Ill. 2d at 412.

However, "[a] defendant may enter a guilty plea because of some erroneous advice by his counsel, but this fact alone does not destroy the voluntary nature of the plea." People v. Pugh,

157 Ill. 2d 1, 14 (1993). "In the absence of substantial objective proof showing that a defendant's mistaken impressions were reasonably justified, subjective impressions alone are not sufficient grounds on which to vacate a guilty plea." People v. Williams, 328 Ill. App. 3d 879, 884 (2002). Defendant bears the burden of proving that the circumstances existing at the time of plea justified his mistaken impression, based on objective standards. Williams, 328 Ill. App. 3d at 884. "The resolution of the question of whether the defendant's pleas, made in reliance on counsel's advice, were voluntarily, intelligently, and knowingly made depends on whether the defendant had effective assistance of counsel." Pugh, 157 Ill. 2d at 14.

Claims of ineffective assistance of trial counsel in plea proceedings are resolved under the standard set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct 2052 (1984). See Hill v. Lockhart, 474 U.S. 52, 57, 88 L. Ed. 2d 203, 209, 106 S. Ct. 366, 369-70 (1985) (holding that the Strickland test is applicable to review of plea proceedings). In Strickland, the Supreme Court delineated a two-part test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the sixth amendment. Under Strickland, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant. Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. "In order to satisfy the 'prejudice' requirement in a plea proceeding, the defendant must show that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." Pugh, 157 Ill. 2d at 15, citing Hill, 474 U.S. at 59, 88 L. Ed. 2d at 210, 106 S. Ct. at 370. "The record should demonstrate a 'reasonable probability' that but for the error, the defendant would

have rejected the plea arrangement." Pugh, 157 Ill. 2d at 15. The determination of whether the alleged error was prejudicial largely depends on whether the defendant likely would have succeeded at trial. Pugh, 157 Ill. 2d at 15; see also People v. Mrugalla, 371 Ill. App. 3d 544, 548 (2007).

Here, based on the factual basis for defendant's plea, it is highly unlikely that defendant would have been acquitted. The State's evidence included a match of defendant's DNA to semen found in Roscetti's vagina and rectum and on her jogging pants, shirt and shoe. A pubic hair found at the crime scene was also a DNA match to defendant. Defendant's fingerprints were found inside Roscetti's car. Further, defendant gave a videotaped confession and reenacted the murder. There is nothing in the record suggesting the possibility of an affirmative defense or any defense in the face of the State's overwhelming evidence.

Moreover, defendant's postplea filings complaining of the Illinois Department of Corrections' calculation of defendant's time to be served at 100% instead of 50% demonstrate that defendant was aware of the length of time he would be required to serve in prison. The trial judge was presented with defendant's contradictory claims that he was told he would serve 50% of his 75-year term and that he would serve 20 years of his term. The trial judge based her ruling on her credibility determinations that defendant and codefendant Roach were not credible and APD Palmer and APD Eben were credible. Given the trial judge's superior position to assess the credibility of the testimony, we cannot find that her ruling was an abuse of discretion.

Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

J. GORDON and O'MALLEY, JJ., concur.