NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 250453-U

NO. 4-25-0453

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 10, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| DANIEL C. ALLBRITTON, | ) | No. 19CF718 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Defendant is not entitled to a second remand for a third hearing on his motion to withdraw his guilty plea due to remand counsel's alleged failure to strictly comply with the certification requirements of Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024).

¶ 2     Defendant, Daniel C. Allbritton, pleaded guilty to first degree murder (720 ILCS 5/9-1(a)(2) (West 2018)) and received a 37-year prison sentence. He thereafter filed a motion to withdraw his guilty plea, alleging ineffective assistance of plea counsel. The trial court denied the motion following a hearing, and defendant appealed. On appeal, this court allowed defendant's motion for summary remand for strict compliance with Illinois Supreme Court Rule 604(d) (eff. April 15, 2024). *People v. Allbritton*, No. 4-24-0035 (2024) (order). On remand, defendant, through newly-appointed counsel, filed an amended motion to withdraw his guilty plea. The court denied the motion following a second hearing.

¶ 3    Defendant now appeals the trial court's most recent denial of his motion to withdraw his guilty plea. On appeal, defendant argues he is entitled to a second remand for a third hearing on his motion because "[c]ounsel on remand failed to strictly comply with *** Rule 604(d) where the record refutes compliance with the duty to make amendments to the motion to withdraw the plea that were necessary for an adequate presentation of [his] claims of ineffective assistance by plea counsel." We affirm.

¶ 4                                    I. BACKGROUND

¶ 5                                    A. The Charges

¶ 6    In December 2019, the State charged defendant with three counts of first degree murder—intentional (count I) (720 ILCS 5/9-1(a)(1) (West 2018)), knowing (count II) (*id.*), and strong probability (count III) (*id.* § 9-1(a)(2)). The State alleged in count III that defendant struck the victim without lawful justification knowing it created a strong probability of death. In January 2020, the trial court appointed the public defender's office to represent defendant; attorneys Dale Thomas and Peter Lynch were assigned to defendant's case and represented him through his guilty plea and sentencing.

¶ 7            B. Defendant Claims Ineffective Assistance of Counsel

¶ 8    In May 2021, defendant *pro se* sent a letter to the trial court expressing his concern that he was "not being properly defended" by his attorneys. Defendant alleged, "My trial is set for August 9th 2021 and all they push for is to plea out[.] They reject all my inq[uiries] about everything." Defendant identified the following "inquiries" his attorneys had allegedly "rejected": (1) "any witnesses to be used as character witness [*sic*]"; (2) "explanation of some of [the] evidence against me which I know is not possible"; (3) "why can the State have [an] expert witness but I can not have an expert look at it in my defense" (emphases omitted); (4) "not

submitting my medical records or even bringing my doctors in to testify I'm not physically capible [*sic*] of some of [the] things they say I have done."

¶ 9　　　　　On June 11, 2021, the trial court conducted a hearing on defendant's *pro se* allegations of ineffectiveness. The court questioned defendant and both counsel as to each individual claim defendant had raised in his *pro se* letter. Ultimately, the court concluded the issues raised by defendant related to matters of trial strategy and his attorneys had "shown the requisite preparation and commitment" to the case. The court further "den[ied] any request that something be done differently with [defendant's] attorneys."

¶ 10　　　　　　　　　　　C. Guilty Plea and Sentence

¶ 11　　　　　In August 2021, defendant pleaded guilty to count III in exchange for the State's agreement to dismiss the remaining charges and cap its sentencing recommendation at 38 years of imprisonment. At the guilty plea hearing, defendant indicated to the trial court that he had discussed the agreement and its attendant consequences with his attorneys and he was satisfied with their services. He also indicated that no one had offered him any additional promises or forced him to enter his guilty plea. The court admonished defendant regarding the consequences he faced and the rights he was relinquishing by pleading guilty, and defendant indicated that he understood. The court found defendant's plea was knowing and voluntary.

¶ 12　　　　　As a factual basis for the plea, the State indicated it would present evidence that the victim's girlfriend, Tara Robinson, had dropped off the victim at the Par-A-Dice Hotel Casino in East Peoria, Illinois, on December 5, 2019, and last heard from him around 10 a.m. the next day, when he called to tell her that defendant was picking him up from the casino. Robinson reported the victim missing on December 8, 2019. Detectives from the Tazewell County Sheriff's Office interviewed defendant on December 9, 2019. Defendant told them he had picked

up the victim at the casino on December 6, 2019, dropped him off at a bar in Morton, Illinois, and then returned home. Detectives "obtained cell phone location data for [the victim's] cell phone" that showed the phone was never in Morton on December 6, 2019, but it instead had traveled from the casino at approximately 10 a.m. to "the immediate area" of defendant's house. Detectives "reinterviewed" defendant at the police station, and the interview was video and audio recorded. Defendant gave multiple conflicting statements during the interview about where he had taken the victim after picking him up and whether the two of them had had any sort of altercation. For instance, defendant "initially told [detectives] that he and [the victim] had never argued or had a disagreement, but then later [stated] *** that he had gotten frustrated with [the victim] on December 6, had grabbed [his] head, and struck him against [the] vehicle several times." Defendant eventually stated "that what happened was all his fault, and he admitted to detectives that he had argued with [the victim] over drugs."

¶ 13    The State further indicated that its evidence would show defendant consented to a search of his home and vehicle on December 11, 2019, and a crime scene investigator with the Illinois State Police, Erin Bowers, processed both areas. Bowers located "numerous areas of blood in the garage and vehicle" that was later determined to belong to the victim. Bowers also "noted that a large section of carpet in the rear cargo area [of defendant's vehicle] was missing and appeared to have been cut out." Bowers recovered a mop and baseball bat in the garage with the victim's blood on them, and "she observed a hand palm print made in a red blood-like substance on a freezer in the garage" that was later determined to match the palm print of defendant. The victim's body was discovered on December 23, 2019, in a ravine in rural Tazewell County. An autopsy revealed that the victim's cause of death was "blunt force trauma as a result of an assault" and that he "died as a result of multiple strikes to the face and head."

- 4 -

¶ 14    In September 2021, the trial court sentenced defendant to 37 years in prison.

¶ 15    D. Defendant's Initial Motion to Withdraw His Guilty Plea

¶ 16    Defendant filed a timely motion to withdraw his guilty plea on the basis his plea attorneys were ineffective. Postplea counsel was appointed to represent defendant on his motion, and she subsequently filed a new motion to withdraw the guilty plea on his behalf. In the motion, defendant argued his plea attorneys "failed to provide effective assistance of counsel by" doing the following:

"(1) Promising to visit the Defendant in jail but failing to do so on a regular basis.

(2) Not allowing the Defendant to view the discovery, even admitting that they hadn't viewed all of the discovery.

(3) Not following up with possible defense witnesses provided by the Defendant.

(4) Refusing to obtain and/or use Defendant's medical records as a way to show that Defendant couldn't have committed the crime alleged.

(5) Telling the Defendant to plead guilty because he would receive a much longer sentence from the judge.

(6) The attorney informing the Defendant that he was only involved for the money and fame. If he loses, he'll just move on to the next case.

(7) Refusing to give a 9 page letter written by the Defendant to the judge.

(8) Informing the Defendant on the day of trial that his only option was to plead guilty."

¶ 17 The trial court conducted a hearing on defendant's motion. At the hearing, defendant testified to the claims in his motion, and postplea counsel presented her argument on the merits of the motion. Ultimately, the court denied defendant's motion, finding most of his claims "involved decisions of trial strategy" and that "the record does not support that there was ineffective counsel as it relates to the plea."

¶ 18 Defendant appealed the trial court's denial of his motion. On appeal, he filed an agreed motion for summary remand, arguing postplea counsel's Rule 604(d) certificate failed to strictly comply with the rule. We allowed defendant's motion and remanded for further proceedings in strict compliance with Rule 604(d).

¶ 19                          E. Proceedings on Remand

¶ 20 On remand, defendant was appointed new counsel who filed an amended motion to withdraw the guilty plea on his behalf. In the amended motion, defendant "allege[d] that his plea was not given knowingly, intelligently, or voluntarily" because his plea attorneys "provided him with ineffective assistance [of] counsel, by" doing the following:

"i. Failing to visit [him] at the jail on a regular basis despite promises to the contrary;

ii. Failing to allow [him] to view the discovery materials;

iii. Failing to review all the discovery materials themselves;

iv. Failing to investigate or follow-up with all potential defense witnesses provided to them by [him];

v. Refusing to procure or utilize [his] medical records in support of his defense, *i.e.*, that he could not have physically committed the offense;

vi. Instructing [him] to plead guilty lest he be sentenced to a harsher prison

- 6 -

term;

vii. One [of] the court-appointed attorneys informing [him] that he was only involved in the case for the fame or money, and that if he loses, he would just move on to the next case;

viii. Refusing to present [his] 9-page letter to the trial judge;

ix. Informing [him] on the eve of trial that his only option was to plead guilty, which led him to believe pleading guilty was his only option."

Defendant also "assert[ed] his actual innocence to the charges."

¶ 21    The trial court conducted a second hearing on defendant's motion. At the hearing, defendant again testified to the claims in his motion. At the conclusion of defendant's testimony, remand counsel asked him if there was any other issue he thought the court "should hear as to why [his] plea that day was not knowing, intelligent, or voluntary." Defendant stated, "Not discussing the defense with me, the medical record part of it. I would say that would be sufficient." After the State cross-examined defendant, remand counsel presented argument on the merits of the motion.

¶ 22    In denying defendant's motion, the trial court began by stating that it found his "testimony to be self-serving, a lot of baseless allegations." The court also noted defendant's motion consisted of "mostly the same claims" the court had addressed at the June 11, 2021, hearing on his *pro se* ineffectiveness allegations and he had been "provided with ample opportunity to address the Court and enough opportunity to address the Court." The court concluded there was not a "deficiency of counsel in this case that would obviate or get rid of [defendant's] *** knowing and voluntary *** plea of guilty."

¶ 23    This appeal followed.

¶ 24                                          II. ANALYSIS

¶ 25          On appeal, defendant argues he is entitled to a second remand for a third hearing on his motion to withdraw his guilty plea because "[c]ounsel on remand failed to strictly comply with *** Rule 604(d) where the record refutes compliance with the duty to make amendments to the motion to withdraw the plea that were necessary for an adequate presentation of [his] claims of ineffective assistance by plea counsel." More specifically, defendant argues remand counsel breached the above duty by "failing to shape [his] claims into the legal framework necessary to assert ineffective assistance[ ] and failing to attach affidavits to support the claims that were based on information that was not present in the record."

¶ 26          In response, the State, relying on *People v. Shirley*, 181 Ill. 2d 359 (1998), argues that defendant is not entitled to a second remand because he "had a full and fair hearing on the merits of his motion to withdraw" and the motion is clearly meritless. Defendant, relying on *People v. Evans*, 2017 IL App (3d) 160019, replies to the State's argument by asserting that *Shirley* does not apply to the facts of this case because, here, remand counsel's failures were "substantive"—not "technical" as in *Shirley*—and it is impossible to ensure a "full and fair" hearing absent strict compliance with the substance of Rule 604(d). We note defendant makes no argument on appeal that his motion has potential merit.

¶ 27          "Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *In re H.L.*, 2015 IL 118529, ¶ 7." It requires, in pertinent part, that counsel file a certificate in the trial court stating the following:

          "1. I have consulted with the Defendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence;

2. I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and

3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. April 15, 2024), Art. VI Forms Appendix.

The purpose of Rule 604(d) "is to ensure that before a criminal appeal can be taken from a guilty plea, the trial judge who accepted the plea and imposed sentence be given the opportunity to hear the allegations of improprieties that took place outside the official proceedings and *dehors* the record." *People v. Wilk*, 124 Ill. 2d 93, 104 (1988).

¶ 28    "Because Rule 604(d) is designed both to protect [a] defendant's due process rights and to eliminate unnecessary appeals, this court requires strict compliance with its requirements, including the filing of the attorney certificate in the trial court." *Shirley*, 181 Ill. 2d at 362; see *H.L.*, 2015 IL 118529, ¶ 25 ("Strict compliance requires counsel to prepare a certificate that meets the content requirements of the rule and to file the certificate with the trial court."). "[E]ven when the certificate is valid on its face, a remand will be necessary if the record refutes the certificate." *People v. Winston*, 2020 IL App (2d) 180289, ¶ 14. "If this standard of strict compliance is not met, the remedy is a remand to afford defendant another opportunity to be heard on his Rule 604(d) motion. However, once this remedy is granted, there is no further requirement under Rule 604(d) that successive remands and rehearings will be ordered." *Shirley*, 181 Ill. 2d at 371. "Whether counsel complied with Rule 604(d) is a legal question that we review *de novo*." *People v. Gorss*, 2022 IL 126464, ¶ 10.

¶ 29    "A defendant does not have an automatic right to withdraw her guilty plea, as '[a] plea of guilty is a grave act that is not reversible at the defendant's whim.' " *People v. Burge*,

2021 IL 125642, ¶ 37 (quoting *People v. Reed*, 2020 IL 124940, ¶ 47). "Rather, a defendant must establish a manifest injustice under the facts involved." *Id.* "When it appears that the guilty plea was entered *** in consequence of misrepresentations by counsel, *** the [trial] court should permit withdrawal of the guilty plea." *People v. Pugh*, 157 Ill. 2d 1, 13-14 (1993). "A defendant may enter a guilty plea because of some erroneous advice by his counsel, but this fact alone does not destroy the voluntary nature of the plea." *Id.* at 14. "The resolution of the question of whether the defendant's pleas, made in reliance on counsel's advice, were voluntarily, intelligently, and knowingly made depends on whether the defendant had effective assistance of counsel." *Id.*

¶ 30    To establish a claim of ineffective assistance, a defendant must "demonstrate both that counsel's performance was objectively unreasonable and that such deficiency prejudiced the defendant." *People v. Brown*, 2023 IL App (4th) 220573, ¶ 29. "To establish prejudice in the guilty plea context, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *People v. Valdez*, 2016 IL 119860, ¶ 29 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Where, as here, the defendant's claim relates to his prospects at trial, our supreme court "requires a claim of innocence or a plausible defense to establish prejudice." *People v. Brown*, 2017 IL 121681, ¶ 45 (citing *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005), and *People v. Rissley*, 206 Ill. 2d 403, 459-62 (2003)).

¶ 31    Turning to the merits, as discussed in further detail below, we find it unnecessary to determine whether remand counsel's facially valid Rule 604(d) certificate is refuted by the record. Even assuming, *arguendo*, remand counsel failed to strictly comply with Rule 604(d), as argued by defendant, we nonetheless agree with the State that defendant received a "full and fair" second opportunity to present his motion to the trial court and a second remand for a third

- 10 -

hearing would be "an empty and wasteful formality" considering the overwhelming evidence of defendant's guilt. *Shirley*, 181 Ill. 2d at 370.

¶ 32 In *Shirley*, our supreme court held that the requirement of strict compliance with Rule 604(d) need not "be applied so mechanically as to require Illinois courts to grant multiple remands and new hearings following the initial remand hearing." *Id.* at 369. In that case, the defendant's attorney initially failed to file a Rule 604(d) certificate with the defendant's motion to reduce his sentences, so the case was remanded for strict compliance with the rule. *Id.* at 364. On remand, the same attorney filed a proper certificate and a motion to withdraw as counsel, which the trial court granted. *Id.* at 364-65. New counsel was appointed, and she filed a new motion on the defendant's behalf. *Id.* at 365. However, she did not file her Rule 604(d) certificate until four days after the hearing on the defendant's motion, which was denied. *Id.* at 365-66.

¶ 33 On appeal, the defendant argued that counsel's failure to file a timely certificate "entitled [him] to a second remand *** to the trial court for *** a third hearing on his sentencing motion." *Id.* at 367. In rejecting the defendant's argument, the supreme court first noted that he had "received the full benefit of the [strict compliance standard] because he was granted a remand and a new hearing on his sentencing motion." *Id.* at 369. It then stated, "Where, as here, the defendant was afforded a full and fair second opportunity to present a motion for reduced sentencing, we see limited value in requiring a repeat of the exercise, absent a good reason to do so." *Id.* After analyzing the potential merits of the defendant's motion and finding none, the *Shirley* court concluded as follows:

> "There is nothing in the record, or in the two motions to reduce sentences, or in
> the two Rule 604(d) certificates filed by two different attorneys, which indicates
> any reason why this court should remand the cause for a third hearing on

defendant's claim that his sentences were excessive. In light of all these circumstances, requiring another remand and hearing on the motion to reduce sentences would be an empty and wasteful formality." *Id.* at 370.

¶ 34        Here, as in *Shirley*, defendant received the full benefit of the strict compliance standard—*i.e.*, "a full and fair second opportunity to present [his] motion" to the trial court. *Id.* at 369. Following the initial denial of his motion to withdraw his guilty plea after a hearing, we remanded the case for strict compliance with Rule 604(d). On remand, remand counsel filed an amended motion on defendant's behalf, and defendant testified to his claims at a second hearing on the amended motion. At the conclusion of defendant's testimony, remand counsel asked him if there was any other issue he thought the court "should hear as to why your plea that day was not knowing, intelligent, or voluntary." Defendant stated, "Not discussing the defense with me, the medical record part of it. I would say that would be sufficient." Remand counsel then argued the merits of the motion. See *People v. Tejada-Soto*, 2012 IL App (2d) 110188, ¶ 14 ("[A] defendant seeking to withdraw his plea is entitled to a hearing that is *meaningful*, but only in the very limited sense that it is not a mere charade performed for the purpose of reinstating an appeal." (Emphasis in original.)). We find defendant received a meaningful hearing on remand, unlike the situation in those cases requiring a successive remand, "in which, for all practical purposes, no hearing occurred on [the initial] remand." *Id.* ¶ 16; see, *e.g.*, *People v. Fricks*, 2017 IL App (2d) 160493, ¶¶ 1, 7 (finding the hearing on remand amounted to a "mere charade performed for the purpose of reinstating an appeal" where defense counsel "did not ask to be heard on" the defendant's motion but merely indicated he "was standing on and adopting his prior motion" (internal quotation marks omitted)); *People v. Oliver*, 276 Ill. App. 3d 929, 932 (1995) (holding the defendant did not receive an adequate hearing on remand where "[d]efense

counsel simply renewed orally the previous motion and stated that the testimony would be the same"); *People v. Guth*, 2023 IL App (4th) 230240-U, ¶ 20 (finding the hearing on remand inadequate because defense counsel "failed to present the motion *** *at all* when he erroneously informed the court that it was barred by *res judicata* and acquiesced to the court's decision to strike the motion" (emphasis in original and internal quotation marks omitted)).

¶ 35        As previously indicated, defendant argues he did not receive the full benefit of strict compliance with the standard because remand counsel's noncompliance with Rule 604(d) was "substantive"—not "technical" as in *Shirley*—and it is impossible to ensure a "full and fair" hearing on remand absent strict compliance with the substance of the rule. Defendant bases his argument on the following statement in *Evans*, 2017 IL App (3d) 160019, ¶ 24: "[I]n *Shirley*, multiple substantively compliant certificates were filed, but the timing of the certificates rendered them technically noncompliant. Thus, it is the *substantive* compliance with the Rule 604(d) certification requirements that ensures a full and fair postplea hearing." (Emphasis in original.)

¶ 36        We find defendant's argument unpersuasive. As an initial matter, the Third District's decision in *Evans* is not binding on this court. See, *e.g.*, *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008) ("[T]he opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels."). In addition, we note that *Evans* was not a unanimous decision. See *Evans*, 2017 IL App (3d) 160019, ¶ 33 (Schmidt, J., dissenting) (stating that the majority's decision to order a successive remand amounted to "an exercise in form over substance"). Moreover, in multiple cases, this court has declined to order either an initial or successive remand despite an alleged failure by counsel to strictly comply with the substance of Rule 604(d) where, as here, the defendant had received a

meaningful opportunity to present his claims to the trial court. See, *e.g.*, *Brown*, 2023 IL App (4th) 220573, ¶¶ 25, 50 (finding an initial remand unnecessary despite counsel's failure to plead a " 'legally cognizable' " claim or provide a supporting affidavit where the defendant received a full and fair evidentiary hearing on his motion); *People v. Kocher*, 2021 IL App (4th) 200610-U, ¶¶ 22, 32 (finding a successive remand unnecessary despite defense counsel's failure to adequately plead a claim of ineffectiveness or provide a supporting affidavit where the "defendant was provided a full and fair second opportunity to present his claims of error to the trial court"); *People v. Jones*, 2021 IL App (4th) 180497-U, ¶¶ 18, 22 (finding an initial remand unnecessary despite defense counsel's failure "to support the certificate with an affidavit, which was required because his motion concerned matters outside the record," where the defendant "was afforded the opportunity in a full meaningful evidentiary hearing to present evidence supporting his claims").

¶ 37        We further find that ordering a successive remand under the circumstances of this case "would be an empty and wasteful formality" (*Shirley*, 181 Ill. 2d at 370), as the evidence of defendant's guilt is overwhelming, and he has not even attempted to refute the State's argument on appeal that his motion is clearly meritless. To be entitled to withdraw his guilty plea based on claims of ineffectiveness and actual innocence, defendant would have the burden at an evidentiary hearing to establish that there is doubt as to his guilt. See, *e.g.*, *People v. Kokoraleis*, 193 Ill. App. 3d 684, 691-92 (1990) (setting forth the grounds allowing for the withdrawal of a guilty plea); see also *Brown*, 2017 IL 121681, ¶ 45 (stating that when a claim of ineffectiveness in the guilty-plea context relates to a defendant's prospects at trial, it must be accompanied by "a claim of innocence or a plausible defense to establish prejudice"). However, a review of the record shows that defendant cannot meet this burden.

¶ 38      As a factual basis for defendant's plea, the State indicated it would present evidence that defendant had picked up the victim at the Par-A-Dice Hotel Casino on the morning of December 6, 2021. Although defendant initially told detectives that he had dropped off the victim at a bar in Morton before returning home, the victim's cell phone records revealed that the phone had traveled directly from the casino to "the immediate area" of defendant's house. During a subsequent interview with police, defendant gave conflicting statements before stating "that what happened was all his fault, and he admitted to detectives that he had argued with [the victim] over drugs." The search of defendant's house and vehicle uncovered "numerous areas" of the victim's blood in the garage and vehicle. A "large section of carpet in the rear cargo area" of defendant's vehicle "was missing and appeared to have been cut out." The victim's blood was found on both a mop and a baseball bat located in the garage, and defendant's palm print, "made in a red blood-like substance," was located on a freezer in the garage. An autopsy revealed that the victim's cause of death was "blunt force trauma as a result of an assault" and that he "died as a result of multiple strikes to the face and head."

¶ 39      Based on this evidence, no argument can be made that defendant would be able to establish doubt as to his guilt at an evidentiary hearing if we were to order a successive remand. Beyond making the conclusory allegation that he was physically incapable of committing the crime to which he pleaded guilty, at no point has defendant attempted to refute the State's proffered evidence in either this court or the trial court. Accordingly, we conclude that even if remand counsel's facially valid Rule 604(d) certificate is refuted by the record, defendant is not entitled to a successive remand where he received a "full and fair" second hearing on his motion, and a second remand for a third hearing would be "an empty and wasteful formality" in light of the overwhelming evidence of his guilt. *Shirley*, 181 Ill. 2d at 370.

¶ 40                              III. CONCLUSION

¶ 41        For the reasons stated, we affirm the trial court's judgment.

¶ 42        Affirmed.